Mansard House, Inc. d/b/a Hurricane Harry's v. Texas Alcoholic Beverage Commission & Doyne Bailey, Administrator
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-277-CV

     MANSARD HOUSE, INC.
     D/B/A HURRICANE HARRY'S,
                                                                              Appellant
     v.

     TEXAS ALCOHOLIC BEVERAGE 
     COMMISSION & DOYNE BAILEY, 
     ADMINISTRATOR,
                                                                              Appellees
 

From the 272nd District Court
Brazos County, Texas
Trial Court # 45,943-85
                                                                                                                

O P I N I O N
                                                                                                                

      Mansard House, Inc. d/b/a Hurricane Harry’s (“Mansard”) appeals the order of the Texas
Alcoholic Beverage Commission (“TABC”) canceling its mixed beverage permit and its mixed
beverage late hours permit. See Tex. Alco. Bev. Code Ann. § 11.61 (Vernon 1995 & Supp.
1998). The district court affirmed the TABC’s order, and Mansard brings three points of error
for appellate review. See Tex. Alco. Bev. Code Ann. § 11.67 (Vernon 1995). 
I. Factual Background
A. Hurricane Harry’s 
      On November 22, 1995, six individuals in Franklin, Texas, decided to go to Hurricane
Harry’s in College Station, Texas, for an evening of drinking and dancing. Most of the
individuals had some beer to drink either in Franklin or during the drive to Hurricane Harry’s. 
      Upon arriving at Hurricane Harry’s late that evening, the group drank and danced for three
or four hours. Doug Sparks, one of the individuals from Franklin, consumed mostly mixed drinks
and a couple of beers. Sparks estimated that he probably purchased between six to eight drinks
for himself at Hurricane Harry’s, although he claims that he was not able to drink all of these
beverages because, when he left the table to dance, occasionally his drink would be gone when
he returned from dancing. Sparks remembered that he bought most of his drinks from one male
bartender. At last call Sparks purchased three “Turkey and Seven[s]” which he quickly drank
because he was told that one of the women in the group was in the ladies restroom and was ill. 
Sparks carried the woman, who had passed out, to his truck, and Sparks then drank one or one
and a half more beers which he had stored in his truck. After leaving Hurricane Harry’s the group
went to a local restaurant to get something to eat.
      At the restaurant, Sparks behaved inappropriately. He harassed a male customer with an
earring, made a young woman cry, and made obscene hand gestures. Due to Sparks’ behavior
several of the individuals with Sparks decided to leave the restaurant and return home in their
truck. After Sparks ate a little food at the restaurant, he got behind the steering wheel of his truck
and began driving back towards Franklin. Marlissa Tice was a passenger in the cab of Sparks’
truck and Joe Cotten was riding in the bed of the truck. South of Hearne, Texas, Sparks’ truck
dropped off the shoulder of the road as he was going about seventy-five miles per hour. As a
result of his vehicle leaving the highway, Sparks ended up flipping his truck in a one-car accident
as he attempted to steer the truck to the left, back onto the road, and then hard to the right to avoid
oncoming traffic.
      Sparks was not injured in the accident. However, Marlissa Tice was injured in the crash, and
Joe Cotten died from head and chest injuries he received in the accident. At five a.m., the state
trooper investigating the accident administered a breath test to Sparks which registered his blood
alcohol level to be .111 in the first sample and .116 in the second sample. Sparks was later
convicted of intoxication manslaughter and sentenced to six years’ confinement in the Institutional
Division of the Texas Department of Criminal Justice. See Tex. Pen. Code Ann. § 49.08
(Vernon 1994).
B. Administrative Proceedings 
      After investigating the cause of this accident, the TABC brought administrative proceedings
against Mansard. At an evidentiary hearing before an administrative law judge (“ALJ”) from the
State Office of Administrative Hearings, the TABC sought to prove that Mansard violated four
provisions of the Alcoholic Beverage Code. The TABC alleged that Mansard sold alcohol to
Sparks when he was obviously intoxicated to the extent that Sparks presented a clear danger to
himself and others and Sparks’ intoxication proximately caused Cotten’s death as well as Tice’s
injuries. See Tex. Alco. Bev. Code Ann. § 2.02(b) (Vernon 1995). The TABC also claimed
that Mansard violated section 11.61(b)(14) of the Alcoholic Beverage Code by selling an alcoholic
beverage to Sparks when he was intoxicated. See Tex. Alco. Bev. Code Ann. § 11.61(b)(14)
(Vernon Supp. 1998). The TABC’s other two charges alleged that Mansard acted with criminal
negligence in selling alcohol to a minor or allowing a minor to consume an alcoholic beverage at
Hurricane Harry’s.


 See Tex. Alco. Bev. Code Ann. § 106.13 (Vernon 1995 & Supp. 1998).
      At the evidentiary hearing, the ALJ found that the TABC presented insufficient evidence to
support its allegation that Mansard acted with criminal negligence in selling or allowing a minor
to consume alcohol at Hurricane Harry’s, and thus, the ALJ sustained Mansard’s motion to
dismiss those two charges. In her proposal for decision, the ALJ further concluded that there was
insufficient evidence Sparks was served alcohol when obviously intoxicated, thus constituting a
clear danger. See Tex. Alco. Bev. Code Ann. § 2.02(b). However, the ALJ did agree with the
TABC that Sparks was served when intoxicated in violation of section 11.61(b)(14) of the
Alcoholic Beverage Code. See Tex. Alco. Bev. Code Ann. § 11.61(b)(14). In making her
decision that Mansard violated section 11.61(b)(14), the ALJ rejected Mansard’s arguments that
it should not be held responsible for its bartender’s sale of alcohol to Sparks, even if Sparks was
intoxicated, because section 106.14(a) of the Alcoholic Beverage Code provides Mansard a
defense to this violation. See Tex. Alco. Bev. Code Ann. § 106.14(a) (Vernon 1995).
      As a penalty for serving Sparks while intoxicated in violation of section 11.61(b)(14), the ALJ
recommended in her proposal for decision that Mansard’s liquor permits be suspended for fifteen
days or it should pay a civil penalty of $15,000 in lieu of the suspension. See Tex. Alco. Bev.
Code Ann. § 11.64 (Vernon 1995 & Supp. 1998). In its final order, the TABC adopted most
of the ALJ’s findings and conclusions, but it rejected the penalty suggested by the ALJ and instead
canceled Mansard’s mixed beverage permit and its mixed beverage late hours permit. Act of May
27, 1991, 72nd Leg., R.S., ch. 591, § 5, 1991 Tex. Gen. Laws 2127, 2128 (amended 1997)
(current version at Tex. Gov. Code Ann. § 2001.058(e) (Vernon Supp. 1998)).


 Mansard’s
motion for rehearing was denied by the TABC. Mansard then appealed the agency’s order to the
district court which affirmed the TABC’s decision. See Tex. Alco. Bev. Code Ann. § 11.67(a)
(Vernon 1995). 
II. Points of Error
      Mansard now brings three points of error for our review. In its first point of error, Mansard
complains that the ALJ’s findings of fact are insufficient and are not supported by substantial
evidence. Mansard’s second point challenges the ALJ’s holding that it is not entitled to a defense
to the section 11.61(b)(14) violation alleged by the TABC, with said defense based on section
106.14(a) of the Alcoholic Beverage Code. See Tex. Alco. Bev. Code Ann. § 106.14(a). In
its third point of error, Mansard argues that the cancellation of its two liquor permits was
improper.
Does Mansard have an affirmative defense to the violation alleged by the TABC 
based on section 106.14 of the Alcoholic Beverage Code?

      At the outset we will examine Mansard’s second point of error arguing that it has an
affirmative defense to the violation alleged by the TABC. Section 106.14(a) provides:
 
(a) For purposes of this chapter and any other provision of this code relating to the
sales, service, dispensing, or delivery of alcoholic beverages to a minor or an intoxicated
person or the consumption of alcoholic beverages by a minor or an intoxicated person,
the actions of an employee shall not be attributable to the employer if:
(1) the employer requires its employees to attend a commission-approved seller
training program;
(2) the employee has actually attended such a training program; and
(3) the employer has not directly or indirectly encouraged the employee to violate
such law.

Tex. Alco. Bev. Code Ann. § 106.14(a). Thus, section 106.14(a) acts as an affirmative defense
for an employer who has met this section's requirements because an employee’s violation of 
section 11.61(b)(14) by selling alcohol to an intoxicated person or the employee’s violation of
section 2.02(b) in selling alcohol to an obviously intoxicated person will not be attributed to the
employer. See Tex. Alco. Bev. Code Ann. §§ 2.02(b), 11.61(b)(14), 106.14(a); Gonzalez v.
South Dallas Club, 951 S.W.2d 72, 76-77 (Tex. App.—Corpus Christi 1997, no writ) (discussing
section 106.14 as an affirmative defense to a violation of the Dram Shop Act—section 2.02 of the
Alcoholic Beverage Code); Pena v. Neal, Inc., 901 S.W.2d 663, 667 (Tex. App.—San Antonio
1995, writ denied) (same); see also Holguin v. Ysleta Del Sur Pueblo, 954 S.W.2d 843, 852 (Tex.
App.—El Paso 1997, pet. denied) (same). In Holguin v. Ysleta Del Sur Pueblo, the El Paso Court
of Appeals observed that the Alcoholic Beverage Code uses “potential liability under the [Dram
Shop] Act as an incentive for employers to instigate training programs devised by the TABC.” 
Holguin, 954 S.W.2d at 852.
      In the instant case, it is not disputed that Mansard requires its employees to attend TABC
approved seller-training programs and that its employees have actually attended these programs. 
See Tex. Alco. Bev. Code Ann. § 106.14(a)(1),(2) (Vernon 1995). What is in dispute is
whether Mansard has fulfilled the third prong of section 106.14(a)'s seller-training defense, i.e.
that it has not directly or indirectly encouraged its employees to violate the law prohibiting service
to intoxicated persons. See Tex. Alco. Bev. Code Ann. § 106.14(a)(3) (Vernon 1995).
A. Standard of Review 
      Decisions of the TABC to cancel a liquor permit are reviewed by an appellate court under the
substantial evidence rule. See Tex. Alco. Bev. Code Ann. § 11.67(a), (b) (Vernon 1995). The
Administrative Procedure Act in section 2001.174 details how courts are to apply the substantial
evidence rule in reviewing an agency’s decision. See Tex. Gov. Code Ann. § 2001.174 (Vernon
Supp. 1998). Section 2001.174 of the Administrative Procedure Act reads:
If the law authorizes review of a decision in a contested case under the substantial
evidence rule or if the law does not define the scope of judicial review, a court may not
substitute its judgment for the judgment of the state agency on the weight of the evidence
on questions committed to agency discretion but:
(1) may affirm the agency decision in whole or in part; and
(2) shall reverse or remand the case for further proceedings if substantial rights of
the appellant have been prejudiced because the administrative findings, inferences,
conclusions, or decisions are:
(A) in violation of a constitutional or statutory provision;
(B) in excess of the agency's statutory authority;
(C) made through unlawful procedure;
(D) affected by other error of law;
(E) not reasonably supported by substantial evidence considering the reliable and
probative evidence in the record as a whole; or
(F) arbitrary or capricious or characterized by abuse of discretion or clearly
unwarranted exercise of discretion. 

Id.
      In conducting a substantial evidence review, courts must give “significant deference” to the
agency’s decision and analyze whether the record demonstrates that the agency had a “reasonable
basis” for its decision. See Railroad Comm’n of Texas v. Torch Operating Co., 912 S.W.2d 790,
792-93 (Tex. 1995); see also City of El Paso v. Public Util. Comm’n of Texas, 883 S.W.2d 179,
185 (Tex. 1994). The agency’s action should be upheld if its decision is supported by “more than
a mere scintilla” of evidence. Id.
B. Application
      In the instant case, the ALJ’s seventh conclusion of law, which was later adopted by the
TABC, was that Mansard was not entitled to section 106.14's seller-training defense, and this
conclusion was based on findings of fact 45 through 50.


 It is evident that in making findings of
fact 45 through 50, the ALJ impliedly found that Mansard had directly or indirectly encouraged
its employees to violate the law, and from this finding, the ALJ drew her legal conclusion that
Mansard was not entitled to the seller-training defense in section 106.14. See Fox v. Medina, 848
S.W.2d 866, 872 (Tex. App.—Corpus Christi 1993, no writ) (discussing the sufficiency of the
evidence supporting an implicit finding of fact upon which the hearing examiner based a
conclusion of law). Therefore, we will review whether substantial evidence supports the ALJ’s
implicit finding of fact that Mansard directly or indirectly encouraged its employees to violate the
law. See Tex. Gov. Code Ann. § 2001.174(2)(E) (Vernon Supp. 1998); see generally W.
Wendell Hall, Standards of Review in Texas, 29 St. Mary’s L.J. 351, 503-507 (1998). 
      We can easily determine whether substantial evidence shows that section 106.14(a)(3) was
violated by answering three basic questions: (1) who is the employer?, (2) who is the employee?,
and (3) what direct or indirect encouragement to violate the law was given by the employer to the
employee? See Tex. Alco. Bev. Code Ann. § 106.14(a)(3). Although the terms employer and
employee are not defined by the Alcoholic Beverage Code, the answers to the first two questions
seem fairly clear. The male bartender of Hurricane Harry’s who allegedly sold drinks to Sparks
while he was intoxicated is the employee of Mansard House Inc., his employer. However,
Mansard can act only through its agents. See Hammerly Oaks, Inc. v. Edwards, 958 S.W.2d 387,
391 (Tex. 1997). Thus, in the instant case, we must determine if either Jack McGregor, the
general manager of Hurricane Harry’s, or Gary Seaback, the owner of Hurricane Harry’s,



encouraged the staff of Hurricane Harry’s to violate the law and sell alcohol to intoxicated
customers. 
      After reviewing the record, we conclude that there is not substantial evidence in the record
to show that Mansard, through the manager or owner of Hurricane Harry’s, directly or indirectly
encouraged the sale of alcohol to intoxicated persons such as Sparks. The ALJ’s findings of fact
45 to 50 do not identify any act or omission of the manager or owner which directly or indirectly
encouraged the sale of alcohol to intoxicated persons, but instead the ALJ’s findings primarily
summarize the testimony of witnesses regarding the events of November 22, 1995. 
      On appeal, the TABC has argued that there is evidence of direct or indirect encouragement
to violate the law in the record because Mansard did not have a written policy in its employee
handbook on the number of drinks which could be sold to a customer, no written policy stating
that service to an intoxicated person would result in the termination of employment, and because
Mansard’s employment handbook is “out-of-date.” We do not believe these facts support a
finding that the manager or owner of Hurricane Harry’s encouraged employees to violate the law. 
The employment handbook in question contains a section on “responsible alcohol management”
stating that the staff must not admit intoxicated persons to the club, that alcohol must not be served
to intoxicated individuals, that alternative beverages should be offered to intoxicated persons, and
that every reasonable attempt should be made to prevent an intoxicated person from driving. The
employee handbook further informs the employees, “The law holds you responsible if you serve
alcohol to an intoxicated person . . . .” Another section of the employee handbook directs
employees to alert the manager if any guest has consumed too much alcohol, and the handbook
states that the employee should help the guest. Thus, simply because the employee handbook does
not set a specific drink limit or state that an employee will be terminated for serving alcohol to an
intoxicated person, we do not believe that these omissions provide substantial evidence of
encouragement to employees to violate the law. 
      The TABC’s alternative argument seems to be that the conduct of Hurricane Harry’s staff on
the night in question was so egregious that the staff must have been encouraged to violate the law
prohibiting service to intoxicated persons. We disagree. Simply because on November 22, 1995,
the bartender sold numerous drinks to Sparks and no one from Hurricane Harry’s staff helped
Sparks or the other individuals with Sparks after they became intoxicated, this conduct does not
suggest that the bartender who served Sparks was encouraged by the manager or owner to sell
alcohol to intoxicated customers. 
      Finally, we must consider the effect of section 50.9 of the Texas Administrative Code. 16
Tex. Admin Code § 50.9 (Texas Alco. Bev. Comm’n). Section 50.9(c) provides that
[p]roof by the commission that an employee or agent of a licensee/permittee sold,
delivered or served alcoholic beverages to a minor or intoxicated person, or allowed
consumption of same by a minor or intoxicated person, more than twice within a 12-month period, shall constitute prima facie evidence that the licensee/permittee has directly
or indirectly encouraged violation of the relevant laws.
16 Tex. Admin Code § 50.9(c) (Texas Alco. Bev. Comm’n). However, during the evidentiary
hearing, the TABC did not prove two violations within a twelve-month period, and thus it cannot
take advantage of the presumption created by this rule.


 The TABC does point out that some of
the members of Sparks’ group said they had been to Hurricane Harry’s on previous occasions and
gotten drunk; however, the TABC did not prove that these individuals had been served while
intoxicated in the previous twelve months by employees of Hurricane Harry’s. Additionally, in
the instant case, the TABC attempted to offer evidence from other individuals regarding their
experiences in being served while intoxicated at Hurricane Harry’s, but this evidence was
disallowed by the ALJ and cannot be considered on appeal.
      Moreover, Mansard introduced evidence at the hearing in support of its affirmative defense. 
The manager of Hurricane Harry’s testified that employees were required to turn in a form stating
that they had read the employee handbook, that the staff was not compensated based on the
quantity of alcohol sold, that customers were cut off when they had too much to drink, and that
the staff was trained to help intoxicated customers. Furthermore, the manager of Hurricane
Harry’s testified that he discussed with his employees the prohibition on serving alcohol to
intoxicated persons, that he would advise a bartender to begin watching for signs of intoxication
after serving a customer about three drinks, and that he had fired employees in the past for serving
alcohol to minors in violation of the law. The owner of Hurricane Harry’s testified that employees
were always posted at both the entrance and exit of the club to watch for intoxicated persons
entering or leaving, that he discussed alcohol policies at weekly meetings, that he had complained
to the TABC about other bars in the area running unreasonable “any coin, any drink” specials,
and that he had advertised his designated driver program for approximately ten years. Seaback,
the owner, also testified that Hurricane Harry’s stays open for dancing one hour after last call for
the customers to have time to sober up before getting on the road, and during this hour, customers
are provided with pitchers of water to drink. 
      Consequently, after reviewing all the evidence in the record presented by the TABC and
Mansard, we conclude that a finding that Mansard directly or indirectly encouraged the sale of
alcohol to intoxicated persons is not reasonably supported by substantial evidence. Contrary to
the TABC’s argument that the evidence of encouragement in this case is the similar to the evidence
in a Fort Worth Court of Appeals case, I-Gotcha, Inc. v. McInnis, which was affirmed on appeal
by the Fort Worth Court, we believe there are significant differences between these two cases. 
903 S.W.2d 829 (Tex. App.—Fort Worth 1995, writ denied). In I-Gotcha, the Fort Worth Court
found that the trial court did not err in not directing a verdict for the defendant based on its section
106.14 seller-training defense because the court found sufficient evidence that employees were
encouraged to serve alcohol to minors and intoxicated persons. Id. at 838. It is particularly
noteworthy that in I-Gotcha, a dram shop case brought after two teens were involved in an
automobile accident after they became intoxicated at a gentlemen’s club, the nightclub had a
reputation as a place teenagers could get in; it was common for students to see other individuals
from local high schools at the bar; and the management of the nightclub failed to take any action
to tighten security procedures when a waitress of the club was arrested for selling alcohol to a
minor only two months prior to the incident. Id. at 832-34, 838. Thus, because of the different
factual contexts involved in this case and I-Gotcha, we do not believe that any of the other
similarities between the two cases which TABC has pointed out, such as neither bar having a
specific drink limit or an employee handbook that fails to list all of its alcohol policies, leads us
to the same conclusion which was reached in I-Gotcha. Id. at 838. 
      Because substantial evidence does not support a finding that Mansard encouraged its
employees to violate the law, Mansard’s second point of error is sustained. Therefore, we must
reverse both the TABC’s order canceling Mansard’s two liquor permits and reverse the judgment
of the district court affirming this order. See Gulf States Utils. Co. v. Public Util. Comm’n of
Texas, 947 S.W.2d 887, 892 (Tex. 1997). In compliance with section 2001.174 of the
Administrative Procedure Act, we remand this case to the TABC for further proceedings. See
Tex. Gov. Code Ann. § 2001.174. Because we have sustained Mansard’s second point of error
and ordered a reversal and remand of this case, we need not decide Mansard’s first and third
points of error. See Live Oak Resort, Inc. v. Texas Alcoholic Beverage Comm’n, 920 S.W.2d 795,
799 (Tex. App.—Houston [1st Dist.] 1996, no writ).
 

                                                                         BOBBY L. CUMMINGS
                                                                         Justice

Before Chief Justice Davis,
      Justice Cummings, and
      Chief Justice McDonald (Retired)
Reversed and remanded
Opinion delivered and filed July 15, 1998
Do not publish