Affirmed in Part and Reversed and Remanded in Part and Opinion filed
April 11, 2006









Affirmed in Part and Reversed and Remanded in Part and Opinion filed April 11,
2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-00250-CV

____________

 

JOHN L. PARKER, Appellant

 

V.

 

20801, INC., Appellee

 



 

On Appeal from the 270th
District Court 

Harris County, Texas

Trial Court Cause No. 01-59134

 



 

O P I N I O N








Appellant John L. Parker appeals after the
trial court granted summary judgment in favor of appellee 20801, Inc. (A20801").[1]  In two points of error, appellant contends
that the trial court=s grant of summary judgment was improper
because (1) Section 2.03 of the Texas Alcoholic Beverage Code does not preempt
the common law causes of action asserted by appellant; and (2) appellee failed
to establish the safe harbor affirmative defense contained in Section
106.14(a)(3) of the Texas Alcoholic Beverage Code.  We affirm in part and reverse and remand in
part.

Background

On November 19, 1999, appellant John L.
Parker attended the grand opening of Slick Willie=s Family Pool
Hall, where he consumed alcoholic beverages throughout the evening.  According to appellant, the bartender told
him to Adrink up@ and the manager
and employees gave him a number of drinks. 
During the evening, appellant encountered Anthony Griffin, the son of
appellant=s ex-girlfriend.  Appellant and Griffin eventually became
intoxicated and began to argue inside the pool hall.  As a result, manager Craig Watson told
appellant to leave and escorted him to the door.  Watson went back inside the pool hall when he
saw appellant walking toward a car.  

A few minutes later, Griffin, his mother,
and his girlfriend followed appellant outside. 
Watson observed appellant and Griffin conversing in an apparently civil
manner.  Before long, however, the
previous argument recommenced.  Griffin
suddenly punched appellant, causing him to fall and strike his head on the
pavement.  The fall fractured appellant=s skull and caused
permanent brain damage.  








Appellant sued 20801 under the Dram Shop
Act.[2]  See Tex.
Alco. Bev. Code Ann. '' 2.01, 2.03
(Vernon 2005); ' 2.02 (Vernon Supp. 2005); Smith v.
Sewell, 858 S.W.2d 350, 359 n.1 (Tex. 1993) (Chapter 2 of the Texas
Alcoholic Beverage Code is commonly known as the ADram Shop Act@).  Appellant alleged that 20801, its agents,
servants, and employees were negligent in that Athey provided,
supplied, sponsored, encouraged, served and/or sold intoxicating alcoholic beverages
and liquor to [appellant] and Griffin when they knew or should have known that
they had become obviously intoxicated to such a degree as to present a clear
danger to themselves and others, and such intoxication was a proximate cause of
the damages suffered by [appellant].@

Appellant also pled a cause of action
based on premises liability, alleging that the breach of 20801=s duty to exercise
reasonable care to protect him from Griffin=s intentional and
criminal conduct was the proximate cause of his injuries.  Appellant alleged four specific ways in which
20801 and its agents, servants, and employees were negligent: (1) in telling
appellant to leave the pool hall without regard for his safety in the parking
lot; (2) in failing to demand that Griffin leave the premises before appellant
was injured; (3) in failing to timely notify the police; and (4) in failing to
warn appellant that Griffin was following him outside.

In its motion for summary judgment, 20801
argued that Section 2.03 of the Code preempts appellant=s common law
causes of action.  Additionally, 20801
argued that it had complied with the safe harbor defense in Section 106.14 of
the Code, which immunizes a commercial provider of alcoholic beverages from
liability for its employees= provision of
alcohol to an intoxicated customer if: (1) the employer requires employees to
attend a commission-approved seller training program; (2) the employee has
actually attended such a training program; and (3) the employer has not
directly or indirectly encouraged the employee to violate such law.  See Tex.
Alco. Bev. Code Ann. '
106.14(a)(1)-(a)(3) (Vernon 2005).

The trial court granted 20801=s motion for
summary judgment on February 1, 2005 without specifying the grounds
therefore.  On appeal, appellant
specifically contends that (1) his premises liability claim is not preempted
and (2) 20801 failed to establish that it did not directly or indirectly
encourage its employees to violate the law.

Standard of Review








In a traditional motion for summary
judgment, the movant has the burden to show that no genuine issue of material
fact exists and that the movant is entitled to judgment as a matter of
law.  Tex.
R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin.
Corp., 988 S.W.2d 746, 748 (Tex. 1999). 
In reviewing a grant of summary judgment, we take as true all evidence
favorable to the nonmovant and make all reasonable inferences in the nonmovant=s favor.  Nixon v. Mr. Property Mgmt. Co., 690
S.W.2d 546, 549 (Tex. 1985).  A
defendant, as movant, is entitled to summary judgment if it (1) disproves at
least one element of the plaintiff=s theory of
recovery; or (2) pleads and conclusively establishes each essential element of
an affirmative defense, thereby rebutting the plaintiff=s cause of
action.  Am. Tobacco Co., v. Grinnell,
951 S.W.2d 420, 425 (Tex. 1997).  An
element is conclusively proved if ordinary minds could not differ as to the
conclusion to be drawn from the evidence. 
Triton Oil & Gas Corp. v. Marine Contractors & Supply Inc.,
644 S.W.2d 443, 446 (Tex. 1982).

The nonmovant does not have a burden to
respond to a traditional motion for summary judgment unless a movant
establishes its right to judgment as a matter of law.  Casso v. Brand, 776 S.W.2d 551, 556
(Tex. 1989).  If the movant has met its
burden, it is incumbent upon the nonmovant to respond to the movant=s evidence and to
present contrary evidence sufficient to create a fact issue, or else risk an
adverse ruling.  Westland Oil Dev.
Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 907 (Tex. 1982).  When, as here, a trial court=s order granting
summary judgment does not specify the grounds relied upon, we must affirm
summary judgment if any of the summary judgment grounds are meritorious.  Oliphint v. Richards, 167 S.W.3d 513,
515-16 (Tex. App.CHouston [14th Dist.] 2005, pet. denied).

Preemption of Premises Liability
Claim

In his first point of error, appellant
contends that because he can simultaneously pursue both dram shop and premises
liability causes of action, the trial court=s grant of summary
judgment in favor of 20801 was erroneous. 
We disagree.








Before the enactment of the Dram Shop Act
in 1987, no cause of action existed against a provider of alcoholic beverages
for injuries resulting from a patron=s
intoxication.  Smith, 858 S.W.2d
at 352; Steak & Ale of Tex., Inc., v. Borneman, 62 S.W.3d
898, 906 (Tex. App.CDallas 2002, no pet.); Holguin v.
Ysleta Del Sur Pueblo, 954 S.W.2d 843, 852 (Tex. App.CEl Paso 1997, pet.
denied).  The Dram Shop Act provides that
commercial providers of alcohol may be liable for the actions of their
intoxicated customers if (1) it was apparent to the provider that the
individual being sold, served, or provided with alcohol was obviously
intoxicated to the extent that he presented a clear danger to himself and
others and (2) the patron=s intoxication was the proximate cause of
the damages suffered.  Tex. Alco. Bev. Code Ann. '' 2.01(1), 2.02(b)
(Vernon 2005); Smith, 858 S.W.2d at 352.[3]

The Dram Shop Act Aprovides the
exclusive cause of action for providing an alcoholic beverage to a person 18
years of age or older.@[4]  Tex.
Alco. Bev. Code Ann. ' 2.03(c) (Vernon
2005).  The Act also states that A[the] liability of
providers under this chapter for the actions of their employees, customers,
members, or guests who are or become intoxicated is in lieu of common law or
other statutory law warranties and duties of providers of alcoholic beverages.@  Tex.
Alco. Bev. Code Ann. ' 2.03(a) (Vernon
2005). 








While no court has addressed preemption in
the specific context of premises liability, courts clearly have held that the
Act=s exclusive remedy
provision bars other common law actions against a statutorily liable
provider.  For example, in Southland
Corp. v. Lewis, 940 S.W.2d 83, 84 (Tex. 1997), plaintiff Dori Sue Lewis was
injured in an automobile collision with a truck driven by Reed Bulaich.  Bulaich, twenty-one, had been drinking at a
party and then at a bar.  Id.  He then drove several friends to a 7-Eleven
convenience store, where passenger Chris Ernemann bought more beer.  Id. 
Bulaich did not enter the convenience store or consume any of the
beer.  Id.  The accident occurred shortly after Bulaich
and his friends left the convenience store. 
Id.

Lewis sued 7-Eleven and the bar under the
Dram Shop Act.  She also alleged that the
defendants were negligent and negligent per se in providing alcohol to both
Bulaich and Ernemann.  Id.  7-Eleven moved for summary judgment on
grounds that it had not proximately caused Lewis=s damages and that
the Act=s exclusive remedy
provision precluded Lewis=s negligence and negligence per se
claims.  Id.  The trial court granted summary judgment in
favor of 7-Eleven on all claims without stating grounds therefore.  Id. 
The court of appeals reversed and remanded, but the supreme court
reversed and rendered judgment in favor of 7-Eleven.  Id. 


On the preemption issue, the supreme court
held that ALewis=s negligence and
negligence per se claims [were] clearly barred by the exclusive remedy
provision of chapter 2 of the Texas Alcoholic Beverage Code.@  Quoting the statutory language, the court
stated that Asection 2.03 expressly precludes a
negligence or negligence per se cause of action against a provider of alcohol
when the purchaser is at least eighteen years of age.@  The court reasoned that summary judgment in
favor of 7-Eleven was proper because both Ernemann and Bulaich were over
eighteen years of age.  Id.[5]  








Similarly, in Boyd v. Fuel Distrib.
Inc., 795 S.W.2d 266, 268 (Tex. App.CAustin 1990, writ
denied), eighteen-year-olds Neal Boyd and Robert Kruse were involved in a car
accident after Kruse had bought beer from a convenience store operated by the
defendant.  Boyd, the driver, was killed,
and Kruse, the passenger, was seriously injured.  Id.  
Boyd and Kruse had been drinking before stopping at the convenience
store, and they were both intoxicated at the time of the accident.  Id. 
The plaintiffs brought a cause of action under the Dram Shop Act;
they also alleged a violation of Section 106.03(a) of the Code, which makes it
an offense to sell an alcoholic beverage to a minor if the sale is committed
with criminal negligence.  Tex. Alco. Bev. Code Ann. ' 106.03(a) (Vernon
2005); Boyd, 795 S.W.2d at 268. The plaintiffs argued that they were
entitled to recover on their claim under Section 106.03 because that section
overlaps with the Dram Shop Act.  Boyd,
795 S.W.2d at 273.  The Third Court of
Appeals rejected both that argument and the notion that the legislature did not
intend to eliminate common law causes of action by enacting the Dram Shop Act.  Id. 
In doing so, the court stated: 

We may not ignore
the Legislature=s express statement that chapter 2 is the
exclusive cause of action for providing alcoholic beverages to a person
eighteen years of age or older and that it is in lieu of any other statutory
or common law duty of providers. 
Thus, we hold that chapter 2 means what it says and that it sets forth
the exclusive cause of action for providing alcohol to a person eighteen years
of age and older.  

Id.  (emphasis
added).

Two years later, the Tenth Court of
Appeals applied the holding and rationale of Boyd to a similar
case.  See Fuller v. Maxus Energy
Corp., 841 S.W.2d 881, 884 (Tex. App.CWaco 1992, no
writ.).  In Fuller,
eighteen-year-old Terry Nishimuta, a soldier at Fort Hood, purchased beer at a
gas station without being required to show his identification to the
clerk.  Id. at 883.  Several hours later, Nishimuta was involved
in a car accident that killed two other soldiers.  Id. 
The deceased soldiers= parents brought
wrongful death suits against the store manager and several corporate entities,
alleging causes of action for common law negligence and negligence per se under
Section 106.03(a) of the Code.  Id.
The trial court granted the defendants= motion for
summary judgment based on the exclusive remedy provision of the Dram Shop
Act.  Id.  On appeal, the soldiers= parents argued
that the trial court=s interpretation of the exclusive remedy
provision improperly denied them their common law cause of action.  Id. 
The court of appeals disagreed, reiterating that Asection 2.03 sets
out the legislature=s clear intent that the dram shop act be
the exclusive remedy for the sale of alcohol to persons eighteen years or
older, in lieu of any other statutory or common law duty@ and asserting
that AChapter 2 of the
Code is the exclusive remedy for damages for providing alcohol to a person
eighteen years of age or older.@  Id. at 883-84.  








 Appellant contends that this line of case law
is not controlling because appellant=s premises
liability claim is not based on over-service of alcohol.  Specifically, appellant asserts that A[t]he nexis [sic]
of a dram shop act case is overservice by the alcohol provider which results in
injury to either the customer or to an innocent party,@ whereas Athe nexis [sic] of
a premises liability case is the negligent failure to protect a customer from
the intentional and criminal conduct of a third party.@  Thus, appellant concludes, a claim under the
Dram Shop Act and a premises liability claim are not mutually exclusive.[6]









We recognize that a defendant has a
general common law duty to prevent the criminal acts of a third party when the
criminal conduct is foreseeable as a result of the defendant=s negligence.  Nixon, 690 S.W.2d at 550.  However, the plain language of Section 2.03
clearly states that providers= liability under
the Dram Shop Act Afor the actions of their employees,
customers, members, or guests who are or become intoxicated is in lieu of
common law or other statutory law warranties and duties.@  Tex.
Alco. Bev. Code Ann. ' 2.03(a) (Vernon
2005) (emphasis added).  A plain reading
of this section obtains only one meaning: 
20801=s common law duty as a premises owner is
preempted by the Code.  Borneman,
62 S.W.3d at 908 (the legislature Aexpressly
pronounced the Dram Shop Act to be the exclusive remedy against providers of
alcoholic beverages to individuals age eighteen or older@; language that
action under the Act is in lieu of common law or other statutory law
warranties and duties Aclearly expresses legislative intent to
exclude all common-law rights and bar all claims except those specifically
authorized by statute@); Holguin, 954 S.W.2d at 853
(because the Act was created by statute in derogation of common law principles
to regulate commercial providers of alcohol, Acourts should
defer to the plain meaning of the text of the law rather than using the dram
shop law to fashion judicially created remedies@); Gonzalez,
951 S.W.2d at 76 (A[Dram Shop Act] provides the exclusive
basis for the civil liability of commercial providers of alcohol who provide,
sell, or serve an alcoholic beverage to an adult who is obviously intoxicated.@).  We hold that because appellant=s premises
liability claim is preempted by the Code, the trial court did not err to the
extent that it granted summary judgment against appellant=s premises
liability claim. We overrule appellant=s first point of
error.

Safe Harbor Affirmative Defense

In his second point of error, appellant
contends that 20801 did not establish the third element of its affirmative
defense to appellant=s dram shop cause of action.  We agree. 

Section 106.14 of the Code, otherwise
known as the safe harbor defense, provides that the actions of an employee
regarding the sale, service, dispensing, or delivery of alcohol shall not be
attributable to the employer if: (1) the employer requires its employees to
attend a commission-approved seller training program; (2) the employee has
actually attended such a training program; and (3) the employer has not
directly or indirectly encouraged the employee to violate such law.  Tex.
Alco. Bev. Code Ann. ' 106.14(a)-(c)
(Vernon 2005); Perseus, Inc. v. Canody, 995 S.W.2d 202, 207 (Tex. App.CSan Antonio 1999,
no pet.).








Cases interpreting direct or indirect
encouragement of Code violations are highly fact-intensive, and summary
judgment evidence must clearly and specifically deny direct or indirect
encouragement as a matter of law.  See
Tex. R. Civ. P. 166a(c); Pena
v. Neal, Inc., 901 S.W.2d 663, 667 (Tex. App.CSan Antonio 1995,
writ denied).  In Pena, for
example, the Fourth Court of Appeals held that the defendant company had not
established the third element of the safe harbor defense when the only summary
judgment evidence it submitted was conclusory affidavits.  901 S.W.2d at 667-68.  In that case, defendant Neal, Inc., (ANeal@) operated an
all-night convenience store where customers could buy alcoholic beverages after
regular business hours.  Id. at
666.  One night, Margaret Sturm visited
the store and drove away intoxicated.  Id.  Ten minutes later, Sturm=s car crossed the
center lane and crashed head-on into a car driven by Gloria Arriola.  Id. 
Sturm, Arriola, and Arriola=s passenger were
killed.  Id.  Arriola=s relatives sued
Neal under the Dram Shop Act.  Id.
at 665.  Neal contended, inter alia,
that the Code=s safe harbor provision shielded it from
liability.  Id. at 666.  The trial court granted summary judgment in
favor of Neal without stating its grounds. 
Id.  The Fourth Court of
Appeals reversed, holding that summary judgment based on the safe harbor
provision was improper because the evidence offered by Neal failed to
conclusively establish the third element of the defense.  Id. at 668-69.  Neal=s summary judgment
evidence consisted of the affidavit of its president, who stated: ANeither I nor
anyone else at Neal, Inc., has directly or indirectly encouraged [employee]
Margarito de la Cruz to violate the Texas Alcoholic Beverage Code or to sell
alcoholic beverages to an intoxicated person.@  Id. at 667.  The court of appeals reasoned that the
affidavit was conclusory and therefore was incompetent as summary judgment
evidence because its language Amerely repeated
the allegations in the motion and the words of the statute.@  Id. at 668.[7]

Similarly, in Gonzalez, the only
summary judgment evidence that the defendant night club did not directly or
indirectly encourage an employee to violate the law was an employee=s statement in an
affidavit that the management Aheld weekly staff
meetings in which conformance with [Code] regulations regarding serving
alcoholic beverages was discussed.@  951 S.W.2d at 77.  In reversing summary judgment in favor of the
club, the Thirteenth Court of Appeals reasoned that although the employee=s affidavit did
not simply track the statutory language, it provided the court Awith no more
information than would such a conclusory statement@ and gave no
insight into Aappellee=s policy regarding
compliance with the code.@  Id.  








In the instant case, Watson=s affidavit is the
only summary judgment evidence offered by 20801 regarding enforcement of its
alcohol policies.  Watson states in his
affidavit that Aeach month [the management] meet[s] with
all the employees and discuss[es] safety issues . . . and emphasize[s] strict
compilance with Slick Willie=s Responsible
Alcohol Service policy and [the management=s] strict policy
of disciplining employees who violate this policy.@  More specifically, Watson asserts that only
bartenders are allowed to fill drink orders, and that both the server and the
bartender mark the tab.  Watson also
states that the manager reviews the number of customers on each ticket and the
amount of alcohol being served to individual customers and also talks to
customers to assess their levels of intoxication.  According to Watson, if a customer appears
intoxicated, he or she must not be served any more alcohol; instead, servers should
offer the customer free food and non-alcoholic beverages.  Watson also avers that all employees are
encouraged to report suspected over-service of alcohol.

We agree with 20801 that Watson=s affidavit is
specific in establishing that it had a policy prohibiting the employer=s encouragement of
direct or indirect violations of the Code. 
Nevertheless, we believe that a fact issue exists whether 20801 was
actually enforcing its policies on the night in question.  20801 argues that the appropriate focus under
the safe harbor provision is whether a provider has established the existence
of policies and procedures to ensure compliance with the Code.  We disagree that establishment of compliance
procedures alone suffices to trigger the protection of the safe harbor
provision.  We agree with Parker that a
provider also must prove enforcement of its alcohol policies on a particular
occasion to satisfy the third element of the safe harbor defense.








As mentioned above, the Gonzalez court
held that summary judgment based on the safe harbor defense was improper
because a conclusory affidavit did not provide sufficient evidence of the
defendant=s Apolicy regarding
compliance with the code.@ 
951 S.W.2d at 77 (emphasis added). 
20801 cites the court=s use of the word Apolicy@ to support its
contention that the existence and nature of a provider=s alcohol policy
is the sole relevant inquiry under Section 106.14.  We disagree with this interpretation in light
of other language in Gonzalez recognizing that enforcement of a provider=s policy is a
coequally relevant concern.  Remarking
that Aencouragement to
violate the liquor laws in question, i.e., to serve alcohol to an obviously
intoxicated patron, may take many subtle forms,@ the court of
appeals stated that Anegation of any direct or indirect
encouragement would require a more detailed factual analysis of the
circumstances under which alcoholic beverages were being sold and served.@   Id. 
(emphasis added).  This language
suggests that in addition to proving the existence of an alcohol policy and
procedures for its enforcement, a provider must present specific facts
demonstrating its compliance with that policy.

Similarly, when discussing the requirements of affidavits
offered as summary judgment proof under the safe harbor provision, the Pena court
stated that Athe facts of each case involving
employees who are providers of alcoholic beverages will differ regarding the
affirmative actions taken by an employer to avoid either directly or
indirectly encouraging the employee to violate the alcoholic beverage code.@ 
901 S.W.2d at 667 (emphasis added). 
Despite 20801=s insistence that this language refers to the existence of a
provider=s policies and procedures, we believe
that a more reasonable interpretation of Aaffirmative actions@ encompasses specific instances of
the policies= enforcement, especially in light of
the following language:

While we agree with [defendant=s] argument that the legislature has
provided a safe harbor for the employer who requires his employees to attend
the commission-approved seller training programs, the statute=s words plainly demonstrate the
employer must do more than simply require attendance at the training
programs.  It cannot then turn its
back on all actions of the Atrained@ seller-employees, safe in the
assumption that even if employee violations of the alcoholic beverage code do
occur, recovery against the employer will be barred and the employer cannot be
held liable.  This cannot be the
intention of the legislature.

 Id.  (emphasis added). 








Furthermore, the Pena court noted that even had the
proffered affidavit established the safe harbor defense, summary judgment would
have been improper because the plaintiff=s evidence regarding compliance was
sufficient to raise a fact issue.  Id.
at 668.  An expert witness reviewed Neal=s loss control manual, employee
handbook and policy manual, and several depositions and affidavits.  Id. 
In his own affidavit, the expert witness emphasized Neal=s failure to install cameras, its
failure to require employees to report repeated instances of customer
intoxication and loitering, and its disregard for employees= failure to follow policy rules,
including the rule that Aany employee permitting consumption of alcohol will be
immediately terminated.@  Id.  The expert witness ultimately opined that
Neal had both directly and indirectly encouraged de la Cruz to provide
alcoholic beverages to an obviously intoxicated person.[8]  Id. 
This emphasis on noncompliance with the provider=s policies
suggests that enforcement is a more pressing concern under Section 106.14 than
20801 acknowledges on appeal.  

Similarly, in Perseus, Inc., the
Fourth Court of Appeals held that a jury could have found that the Hippodrome,
a night club owned by defendant Perseus, Inc. (APerseus@), indirectly
encouraged its employees to serve alcohol to intoxicated patrons.   995 S.W.2d at 209.  An expert witness testified that the
Hippodrome failed to enforce its written policies when it allowed patron Sam
Selman to enter the club in an intoxicated condition, failed to monitor Selman=s behavior,
continued to serve him alcohol, and allowed him to leave the club in an
intoxicated state.[9]  Id. 
The expert witness believed that the Hippodrome=s failure to
enforce its policies Aevidenced an indirect encouragement to
violate the law.@ Id.  A company shareholder also testified that the
Hippodrome=s employees should have followed the
policies and admitted that Apolicies [are]
irrelevant in the absence of enforcement.@  Id.








Language in I-Gotcha, Inc. v. McInnis,
903 S.W.2d 829 (Tex. App.CFort Worth 1995, writ denied), also
supports our interpretation of the safe harbor provision.  In I-Gotcha, Inc., teenagers John and
Jeff McInnis and their friend Chad Arnett went to Wranglers, a topless bar
owned by the defendant.  Id. at
832.   After becoming intoxicated at the
bar, John and Jeff were involved in a car accident that killed John and left
Jeff seriously injured.[10]   Id. at 834.  Trial testimony revealed that the teens were
not required to show valid identification to enter the club or to order
alcoholic beverages.  Id. at
833.  Apparently, Wranglers had a reputation
for not checking I.D.s, and the boys saw several other underage acquaintances
drinking there.  Id.  There was also evidence that Wranglers knew
about the underage drinking problem because a former waitress had been arrested
for serving alcohol to a minor there.  Id.
at 836.  Furthermore, although John
became noticeably intoxicated, no Wranglers employees attempted to call the
boys a cab, inquired if they had a designated driver, or offered them
non-alcoholic beverages or time to sober up. 
Id. at 834-35. 

The Second Court of Appeals held that
there was sufficient evidence to support the jury=s finding that
Wranglers directly encouraged its employees to violate the law.  Id. at 838.  Although the bar=s owner testified
that he believed employees should be told to check I.D.s and to stop serving
intoxicated patrons, he did not include these standards in the Awaitresses= duties@ section of the
employee rule book.  Id.  Notably, however, he did see fit to include a
rule ensuring that waitresses checked I.D.s before accepting credit card
payments.  Id.  Furthermore, the owner did not provide
written guidelines to ensure alternate transportation for intoxicated patrons
or time for them to sober up.  Id.  Finally, despite the owner=s knowledge that
his establishment had a problem with underage drinking, he did not increase
security or stress to his employees the importance of following the law, even
though he knew the entertainment at the club would likely attract underage
drinkers.  Id.  








 Significantly, the court of appeals asserted
that despite the lack of case law or legislative history regarding what
evidence the legislature intended to be used to show encouragement of employees
to violate the law, courts should Apresume that a
just and reasonable result is intended and that the public interest is to be
favored over private interest.@  Id. (citing Tex. Gov=t Code Ann. ' 311.021(3), (5) (Vernon 2005)).  When construing a statute, it is necessary to
Aconsider the
object the legislature was attempting to attain.@  I-Gotcha, Inc., 902 S.W.2d at 838
(citing Tex. Gov=t Code Ann. ' 311.023(1)
(Vernon 2005)).  Finally, the court
stated:

It is in the
public interest to discourage bar owners from profiting through breaking the
law by serving alcohol to minors and obviously intoxicated minors.  Further, in passing the Dram Shop Act, the
Texas legislature intended to provide a statutory remedy where the negligence
of a bar was found to be the proximate cause of an individual=s injuries
(citation omitted). 

I-Gotcha, Inc., 902 S.W.2d at 838.[11]








Appellee insists that this court should
focus on the existence of its alcohol policies and enforcement procedures
rather than the specific acts of its employees.[12]  Specifically, appellee argues that it met its
burden because it produced evidence that it has an alcohol policy.  Then, according to appellee, the burden
shifted to appellant to show that appellee has a policy that encourages its
employees to break the law.  Appellee
asserts that appellant has submitted no evidence regarding appellee=s alcohol policies
and therefore did not raise a fact issue. 
However, there is no direct authority to support appellee=s argument of
burden-shifting on its affirmative defense.[13]  Meanwhile, language in the above-mentioned
cases indicates that enforcement is also a relevant consideration and that
failure to enforce alcohol policies can constitute indirect encouragement to
break the law.        

We recognize
that these opinions focused in large part on employers= written alcohol policies.  We believe, however, that they forcefully
support our conclusion that conclusive evidence of enforcement is of coequal
importance in invoking the protection of the safe harbor defense.  Similarly, we believe that requiring proof of
enforcement of alcohol policies is in the public interest.  Clearly, such interpretation satisfies the
purpose of the Code, which is an Aexercise of the police power of the state for the
protection of the welfare, health, peace, temperance, and safety of the state@ and Ashall be liberally construed to
accomplish this purpose.@ 
Tex. Alco. Bev. Code Ann. ' 1.03 (Vernon 2005).  See also Holguin, 954 S.W.2d at 851
(commenting that case law construing the Dram Shop Act demonstrates that the
law exists to further the policy interest in Section 1.03 of the Code).  Despite its specific testimony regarding its
policies about service to intoxicated patrons, 20801 did not conclusively prove
that it did not directly or indirectly encourage its employees to serve alcohol
to an intoxicated customer.  
Accordingly, because appellee did not establish the third element of its
affirmative defense, the trial court improperly granted summary judgment on
appellant=s statutory cause of action.  We sustain appellant=s second point of error, reverse
the judgment of the trial court to the extent that it is based on that defense,
and remand the case to the trial court for further proceedings.  We affirm the judgment of the trial court in
all other respects. 

 

 

 

/s/      Adele Hedges

Chief Justice

 

Judgment
rendered and Opinion filed April 11, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Anderson.

 











[1]  While in his
brief appellant refers to appellee as A20801,
Inc. d/b/a Slick Willie=s Family Pool Hall,@ the
original petition, subsequent pleadings, and order granting summary judgment
all refer to appellee only as A20801, Inc.@  Accordingly, we will do the same.





[2]  Appellant also named Slick Willie=s Family Pool Hall, Inc. as a
defendant, and the trial judge granted summary judgment for both 20801 and
Slick Willie=s Family Pool Hall, Inc.  On appeal, appellant contests only the grant
of summary judgment in favor of 20801; therefore, we need not discuss any of
appellant=s claims against Slick Willie=s Family Pool Hall, Inc.

It is also relevant to
note that after being sued by appellant, 20801 and Slick Willie=s Family Pool Hall, Inc. named
Griffin and his mother as third-party defendants, alleging that they
contributed to appellant=s injuries by delaying  appellant=s receipt of medical treatment.  Griffin was also tried criminally for
assaulting appellant.  The record on
appeal contains excerpts of testimony from Griffin=s criminal trial, as well as
excerpts from appellant=s deposition in the underlying
civil case.





[3]   Under the Act, a provider is Aa person who sells or serves an
alcoholic beverage under authority of a license or permit issued under the
terms of this code or who otherwise sells an alcoholic beverage to an
individual.@ 
Tex. Alco. Bev. Code Ann. ' 2.01(1) (Vernon 2005).





[4]  The
legislature enacted the Dram Shop Act on June 1, 1987.  Act of June 1, 1987, 70th Leg., ch. 303, ' 3, 1987 Tex. Gen. Laws 1674, amended by Act of
June 20, 2003, 78th Leg., ch. 456, ' 1, 2003
Tex. Gen. Laws 1698, 1698, amended by Act of June 17, 2005, 79th Leg.,
ch. 643, ' 1, 2005 Tex. Gen. Laws 1617, 1617.  Two days later, the Texas Supreme Court
decided El Chico v.
Poole, 732 S.W.2d
306, 314 (Tex. 1987), in which it stated that providers have a duty under both
common law negligence principles and the newly enacted Dram Shop Act not to
serve alcoholic beverages to a patron when the provider knows or should know
that the patron is intoxicated.  However,
because the Dram Shop Act did not go into effect until June 11, 1987, seven
days after the El Chico decision, Texas courts have recognized that the
legislature created a much more limited statutory cause of action against
commercial providers of alcoholic beverages than El Chico suggests.  Smith, 858 S.W.2d at 353; Borneman,
62 S.W.3d at 906;  Fuller v. Maxus
Energy Corp., 841 S.W.2d 881, 884 (Tex. App.CWaco 1992, no writ.); Boyd v.
Fuel Distrib., Inc. 795 S.W.2d 266, 273 (Tex. App.CAustin 1990, writ denied).





[5]  The supreme
court also noted that the evidence established that 7-Eleven did not provide
alcohol to an obviously intoxicated Bulaich, since Bulaich had remained in the
car and did not consume any of the alcohol purchased from 7-Eleven.  Southland Corp., 940 S.W.2d at 85.





[6]  In support of his premises
liability claim, appellant primarily relies on Gonzalez v. South Dallas Club,
951 S.W.2d 72 (Tex. App.CCorpus Christi 1997, no writ).  In Gonzalez, appellant Laurie Ann
Gonzalez and her friends were involved in an altercation with another group of
people at the defendant night club.  Id.
at 73.  Because the members of the other
group threatened to harm Gonzalez even after the fight was over, the club=s employees allowed her to leave
through the back door in hopes of avoiding another encounter.  Id. at 74.  However, members of the other group followed
Gonzalez and a second dispute erupted about a mile away from the night club=s premises.  During this second altercation, Gonzalez was
struck and seriously injured by a pick-up truck.  Id. 


Gonzalez sued the night club,
alleging dram shop liability for selling alcoholic beverages to the driver of
the truck as well as negligence for failing to provide adequate security and to
summon the police.  Id.  The club moved for summary judgment on
grounds that it had established the safe harbor affirmative defense under the
Code.  See Tex. Alco. Bev. Code Ann. ' 106.14.  Later, the
club also moved for summary judgment on Gonzalez=s negligence and premises liability
claims because the altercation had not occurred on the club=s premises.  Id. 
The trial court granted the club=s motion.  Id.  

The Thirteenth Court of Appeals
affirmed, reasoning that the club could not have foreseen the need to protect
Gonzalez against the criminal conduct of a third party that did not occur on
the club=s premises.  Id. at 76. 
As appellant correctly notes, the court of appeals remarked that Athe duty to provide protection
arises from [defendants=] power of control or expulsion
that their occupation of the premises gives them over the conduct of a third
person who might be present.@  Id.  However, because of its holding on the
premises liability issueCthat the night club owed no duty to
GonzalezCthe court of appeals did not address
whether the Dram Shop Act preempted the premises liability and negligence
claims.  Accordingly, we do not find Gonzalez
to be as instructive as the above-mentioned cases, which support
preemption.

 





[7]  Neal also
offered an affidavit of de la Cruz, which, according to the court of appeals, Aallege[d] the same conclusions in the words of the
statute and also fail[ed] to establish facts.@  Id.





[8]  The court of
appeals also held that summary judgment was improper based on Neal=s defense that it did not provide alcohol to an
obviously intoxicated person.   Id. at 672.  Evidence showed that Sturm, who was an
alcoholic, frequently visited the convenience store, that de la Cruz routinely
gave Sturm free alcoholic beverages, and that Sturm often became intoxicated in
de la Cruz=s presence.  The
court held, therefore, that a fact issue existed as to whether de la Cruz
served alcohol to Sturm on the night of her death.  Id.





[9]  Selman drove
his car while intoxicated and hit and killed two pedestrians.  The pedestrians= parents
brought a wrongful death action against Selman and Perseus.  Id. at 203.





[10]  Although he
was intoxicated, John drove to Chad=s
house.  Id.  The trio talked for a few minutes, then John
sped away with Jeff in the passenger seat. 
Id.  The accident occurred
when John lost control of the car, which flipped off the side of a bridge.  Id. 
When the accident occurred, John=s blood
alcohol level was nearly four times the legal limit.  Id.





[11]  Perseus,
Inc. and I-Gotcha, Inc. differ from the instant case and the other
two safe harbor cases cited herein in that they are appeals from jury trials,
not summary judgments.  See Perseus, Inc., 955 S.W.2d at 204; I-Gotcha,
Inc., 903 S.W.2d at 832. While we
recognize this procedural distinction, we cite these cases for their discussion
of the importance of the enforcement of employers= alcohol
policies.





[12]  Appellee additionally argues that
summary judgment was proper because appellant failed to produce any evidence of
probable cause and other elements of his cause of action.  However, appellee did not move for 166a(c)
summary judgment on these grounds and therefore cannot use these arguments to
support the summary judgment.  Tex. R. Civ. P. 166a(c); McConnell
v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 340-41 (Tex. 1993).





[13]  Appellee cites
Cianci v. M. Till, Inc., 34 S.W.3d 327 (Tex. App.CEastland 2000, no pet.), in support of its
burden-shifting argument.  In Cianci, the
plaintiff was injured in an accident with a drunk driver and sued the bar where
the driver had been drinking.  Id.
at 328.  The Eleventh Court of Appeals
held that the bar had not established the safe harbor defense in its 166a(c)
motion for summary judgment because a fact issue existed whether the bar
directly or indirectly encouraged employees to break the law.  Id. at 330.  The issue arose when the plaintiff presented
testimony from an employee stating that the bar=s
manager told her to keep serving alcohol to obviously intoxicated people until
he made a decision to cut them off.   Id.  20801 cites Cianci for the proposition
that it met its burden by producing evidence of its alcohol policies in the
form of Watson=s affidavit. 
Unlike Perseus, Inc. and Pena, which discuss the defendant=s summary judgment evidence as well as the plaintiff=s, Cianci addresses only the evidence that the
plaintiff presented to raise a fact issue and omits reference to the defendant=s evidence.  Id.
at 330; see also Perseus, Inc., 995 S.W.2d at 208-209; Pena, 901
S.W.2d at 667-68.  Accordingly, we are
unpersuaded that Cianci supports 20801=s burden-shifting argument.