Rafaella PENA, et al., Appellants,

v.

NEAL, INC. d/b/a Fina
One Stop, Appellee.

No. 04–94–00388–CV.

Court of Appeals of Texas,
San Antonio.

May 10, 1995.

Rehearing Overruled June 16, 1995.

Tony Bonilla, Bonilla & Berlanga, Inc., Corpus Christi, Gail Borden Tennant, Jr., San Antonio, for appellants.

Richard A. Sparr, Jr., Sparr & Associates, Inc., Judith R. Blakeway, Richard C. Danysh, Matthews & Branscomb, San Antonio, for appellee.

Before CHAPA, C.J., and DUNCAN and BUTTS, JJ.

## OPINION

SHIRLEY W. BUTTS, Justice.[1]

This is an appeal from a summary judgment in favor of the defendant, Neal, Inc. d/b/a Fina One Stop (Neal), in a dramshop suit. Plaintiffs are Rafaella Pena, mother of deceased Leon Paul Gonzales, who is also the representative of his estate, Ramon Pena, son of deceased Gloria Arriola, who is also the representative of her estate, and Lorenzo

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

Gonzales, intervenor. We reverse and remand.

## Standard of Review

■ A defendant who moves for summary judgment pursuant to TEX.R.CIV.P. 166a has the burden of showing as a matter of law that no material issue of fact exists for the plaintiff's cause of action. *Griffin v. Rowden*, 654 S.W.2d 435, 435–36 (Tex.1983); *see Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 166–67 (Tex.1987). This may be accomplished by showing that at least one element of plaintiff's cause of action has been established conclusively against the plaintiff. *See Gray v. Bertrand*, 723 S.W.2d 957, 958 (Tex.1987); *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107–08 (Tex.1984); *Manoogian v. Lake Forest Corp.*, 652 S.W.2d 816, 818 (Tex.App.—Austin 1983, writ ref'd n.r.e.).

■ The question on appeal is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). The supreme court in *Nixon v. Mr. Property Management Co.* summarized the applicable rules:

1. The burden is on the movant to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law;

2. In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true;

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). *See generally City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979); TEX. R.CIV.P. 166a.

■ Further, when a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex.1989). When a summary judgment does not state the specific grounds upon which it is granted, a party appealing from such order must show that each of the independent arguments alleged in the motion is insufficient to support the order. *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied). In this case since the judgment is a general one, appellants must show that each of the two defensive theories advanced by Neal is insufficient to support the order.

Contending the granting of summary judgment was error, plaintiffs bring four points of error. They assert material fact questions exist in the record concerning defendant/movant's two defenses. Neal, as the employer, maintains it is not liable because of the "safe harbor" provision in section 106.14 of the alcoholic beverage code.[2] This provision creates a statutory defense for an employer. Neal also defended by seeking to conclusively establish that one essential element of plaintiffs' cause of action—providing alcohol to an already intoxicated person—was insufficient.

Neal operated an all-night convenience store and gas station near the town of Kenedy in Atascosa County. An undisputed fact is that Fina One Stop was the sole source of alcoholic beverages in that area after regular sales hours. It is also undisputed that on March 16, 1992, Margaret Sturm was intoxicated (0.29% alcohol blood content) when she drove away from Fina One Stop shortly after 5:30 a.m. Approximately ten minutes later her car crashed head-on into the car driven by Gloria Arriola when the Sturm vehicle crossed over into the lane of oncoming traffic. Killed were Sturm, Arriola, and Arriola's passenger, her grandson.

■ A motion for summary judgment must stand or fall on the grounds expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339–41 (Tex.1993); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d at 675.

---

2. References are to TEX.ALCO.BEV.CODE ANN. (Vernon 1995) unless otherwise indicated.

The dramshop act provides in pertinent part:

(b) Providing, selling, or serving an alcoholic beverage may be made the basis of a statutory cause of action under this chapter ... upon proof that:

(1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to himself and others; and

(2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered.

Section 2.02. This act grants the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older. Section 2.03.

### Affirmative Defense

■ The defendant who moves for summary judgment based on an affirmative defense has the burden to prove conclusively all the elements of the affirmative defense as a matter of law such that there is no genuine issue of material fact. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

To avoid liability by means of the summary judgment action, Neal relies on section 106.14, **Actions of Employer**, which states in pertinent part:

(a) For purposes of this chapter and any other provision of this code relating to the sales, service, dispensing, or delivery of alcoholic beverages to a minor or an intoxicated person or the consumption of alcoholic beverages by a minor or an intoxicated person, the actions of an employee shall not be attributable to the employer if:

(1) the employer requires its employees to attend a commission-approved seller training program;

(2) the employee has actually attended such a training program; *and*

(3) the employer has not directly or indirectly encouraged the employee to violate such law.

(b) The commission shall adopt rules or policies [with minimum requirements and it must approve training programs sponsored privately or by public community colleges].

Section 106.14 (emphasis added). This statutory affirmative defense will bar a plaintiff's recovery against an employer when all three components are alleged and proved. Plaintiffs in this case concede that Neal alleged and sufficiently established the first two components. The record is clear that the employee, Margarito de la Cruz, did attend a commission-approved seller training course. It is the third component that is challenged.

■ Doak Neal, president of Neal, Inc., averred in his affidavit as summary judgment evidence that "the employer has not directly or indirectly encouraged the employee to violate such law":

Neither I nor anyone else at Neal, Inc., has directly or indirectly encouraged Margarito de la Cruz to violate the Texas Alcoholic Beverage Code or to sell alcoholic beverages to an intoxicated person.

While we agree with Neal's argument that the legislature has provided a safe harbor for the employer who requires his employees to attend the commission-approved seller training programs, the statute's words plainly demonstrate the employer must do more than simply require attendance at the training programs. It cannot then turn its back on all actions of the "trained" seller-employees, safe in the assumption that even if employee violations of the alcoholic beverage code do occur, recovery against the employer will be barred and the employer cannot be held liable. This cannot be the intention of the legislature.

■ This is a summary judgment case with certain substantive requirements. The facts of each case involving employees who are providers of alcoholic beverages will differ regarding the affirmative actions taken by an employer to avoid either directly or indirectly encouraging the employee to violate the alcoholic beverage code. The affidavits must state facts, not conclusions. *See General Elec. Supply Co. v. Gulf Electroquip, Inc.*, 857 S.W.2d 591, 598 (Tex.App.— Houston [1st Dist.] 1993, no writ) (affidavit merely stated the allegations in the motion

were true). In this case the affidavit merely repeated the allegations in the motion and the words of the statute, thus stating mere conclusions.

Conclusory statements are not competent summary judgment evidence. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991) (defendant stated he did not commit legal malpractice, was not negligent, did not violate the DTPA, or breach the contract). A legal conclusion in an affidavit is insufficient to establish the existence of a fact in support of a motion for summary judgment. *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984); *see Watkins v. Hammerman & Gainer*, 814 S.W.2d 867, 870 (Tex.App.—Austin 1991, no writ) (affiant's conclusions on agency status not supported by any factual statements).

■■■ A summary judgment must stand on its own merits, and a non-movant's failure to object or obtain a ruling on a conclusory statement cannot supply by default the summary judgment proof necessary to establish the movant's right. *Harley–Davidson Motor Co. v. Young*, 720 S.W.2d 211, 213 (Tex. App.—Houston [14th Dist.] 1986, no writ). This is because a mere conclusion that purports to establish a fact is a substantive defect in an affidavit. The affidavit must set forth facts, not legal conclusions. *See Cuellar v. City of San Antonio*, 821 S.W.2d 250, 252 (Tex.App.—San Antonio 1991, writ denied). Further, in this case, the affidavit of the employee, Margarito de la Cruz, alleges the same conclusions in the words of the statute and also fails to establish facts. Because the summary judgment proof is substantively defective as to the third component of the safe harbor statute and fails to establish that element of the affirmative defense, it cannot support the summary judgment.

■■■ There is a second reason why summary judgment based on the statutory defense is precluded. Dr. James Calder, an expert witness regarding convenience store security, testified by affidavit. His affidavit, part of plaintiffs' summary judgment evidence, reflected that he reviewed Neal's loss control manual, employee handbook, and policy and procedural manual, along with several depositions and affidavits submitted as additional summary judgment proof. His affidavit stresses in particular Neal's failure to install camera monitors, failure to require employees to report repeated instances of customer intoxication and after-hours loitering, and disregarding the failure of employees to follow policy rules, such as Neal's specific rule: "Any employee permitting consumption of alcohol will be immediately terminated." After reviewing the evidence, Dr. Calder stated his opinion that Neal had both directly and indirectly encouraged de la Cruz to provide, give, or sell alcoholic beverages to a person who is obviously intoxicated. It is noted that objections to Dr. Calder's expert testimony were filed late; in addition, the trial court made no ruling on the objections. Thus, the testimony was before the trial court and may be considered by the appellate court.

■■■ The affidavit of the expert filed in opposition to a summary judgment motion need only contain facts which would be admissible at trial and of the kind commonly used by experts, and expert opinions based on those facts. Dr. Calder's type of affidavit would not be sufficient to entitle a party to judgment as a matter of law; however, in this particular case, it is sufficient to raise a fact issue. *See Trapnell v. John Hogan Interests, Inc.*, 809 S.W.2d 606, 610 (Tex.App.—Corpus Christi 1991, writ denied). Thus, even assuming for the sake of argument that the affirmative defense of non-encouragement had been established as a matter of law by the employer, appellants effectively countered with the fact issue of encouragement raised by the non-movant. *See Deer Creek Ltd. v. North Am. Mortgage Co.*, 792 S.W.2d 198, 200–01 (Tex.App.—Dallas 1990, no writ).

We sustain the points of error challenging proof of the affirmative defense and hold that summary judgment based on the safe harbor statute is precluded.

### Providing Alcohol to an Intoxicated Person

Even if the statutory safe harbor defense failed, Neal would still be absolved of liability if it negated as a matter of law the element

of providing alcoholic beverage to an obviously intoxicated person, which is an essential element of the dramshop cause of action, sections 2.02, 2.03.

The employee, de la Cruz, stated by affidavit: "On March 16, 1992, Margaret Sturm came into the Fina One Stop between 5:00 and 5:30 a.m. *I could tell she was drunk.*" (Emphasis added). This is an admission by the employee that he knew Sturm was obviously intoxicated. Margarito de la Cruz averred that Sturm had "a cup of coffee" in the store with Ismael Rodriguez and that she and Rodriguez then went outside. He averred that he "did not sell, serve, give or provide Sturm with any alcoholic beverages on March 16, 1992." He further stated that he requested Rodriguez to give him the license plate number of Sturm's car, "and I called the police in Karnes City to report Sturm as a drunk driver." It is noted there is contradictory evidence in the affidavits of Marcos Villareal and Enrique Carrasco, two customers, that Rodriguez did not re-enter the store but went immediately to his truck and drove away when Margaret left in her car.

Plaintiffs presented deposition summary judgment evidence of Sturm's sister, Mary Sturm. She testified that she and Margaret went to the Fina One Stop during the first part of 1992 about two or three nights each week. She stated that Margaret "used to drink all the time over there. . . ." Margaret never took much money with her because de la Cruz would pay for it. She would open the drink in the store and drink in there and sometimes outside, sometimes in her car. Also, regarding drinking in the store or in her car after midnight, Mary agreed, "She did that quite often." She testified that de la Cruz was the only one working there when they went to Fina One Stop. Asked whether de la Cruz ever refused Margaret a drink or a beer when she asked for it in Mary's presence, she answered, "No."

According to Mary Sturm, her sister often was intoxicated in the presence of de la Cruz. In addition, she was permitted by de la Cruz to get alcoholic beverages from the cooler, and she would help herself to the store's alcoholic beverages, beer or wine, consuming them either in the store or in her car.

There is summary judgment evidence that when Margaret Sturm arrived home from her job at Dairy Queen about 11:00 p.m. on March 15, she was sober. She slept until 3:00 a.m. and left. After 5:00 a.m. she was in the Fina One Stop. It is without dispute that she was intoxicated.

There is evidence that Margaret often visited with de la Cruz at the store late at night and early morning and had done this for several months. They socialized and she would "hang out" there in the early morning hours. In his deposition de la Cruz acknowledged that he introduced Margaret to Ismael Rodriguez, a customer and truck driver, whom she dated. Further, he admitted that on some occasions, Rodriguez purchased alcoholic beverages for Margaret.

After 5:00 a.m., on March 16, 1992, Sturm was in the store. She was talking with de la Cruz, the night manager, and with Ismael Rodriguez. Villareal and Carrasco stated in their affidavits that she was drinking alcohol in her car when they saw her after 5:00 a.m. at the store.

Villareal saw her take a drink from a bottle, since the car was parked just in front of the store window, about three feet away. There was a man, Ismael Rodriguez, standing by her car talking to her. The night manager, de la Cruz, told him the woman was drunk and had been in and out of the store. He saw de la Cruz pick up a flashlight and flash it at Sturm, motioning her to keep the bottle down. The night manager told him she was so drunk, she had left her keys on the counter inside and de la Cruz had to take them to her.

Villareal stated Sturm continued to drink from the bottle, which resembled a Big Red bottle, but it did not have "Big Red" in it. "She was drinking wine from the soda water bottle."

Then de la Cruz "took his flashlight a second time and blinked it at the woman, motioning with his hand for her not to drink where people could see the bottle." Villareal and Carrasco both told de la Cruz he should call the sheriff's office and warn them. "You

can't let her drive off when she's so drunk she could kill herself or somebody. The manager did nothing."

He stated that in a few minutes Rodriguez left Sturm's car and went over to his truck, and she started her car. "Both Enrique and I again told the manager to call the Sheriff, but he said he would do it in a minute." Five or ten minutes later, he said, the manager called the sheriff and told them a gray Chevrolet was going towards Fall City with a very drunk driver at the wheel.

In his affidavit, Enrique Carrasco agreed with the facts stated by Villareal. He said the beverage in the bottle was wine and that the manager flashed a light at Sturm a couple of times, motioning her to keep the bottle down. He also stated that Ismael Rodriguez drove off in his truck at the time Sturm drove off in her car. A short time later, while the two men were still at Fina One Stop, ambulances passed by, and they learned there had been a wreck.

A Rutgers University professor, Robert Pandina, Ph.D., testified as an expert by affidavit, based on his study of the autopsy report on Sturm, the affidavits of Villareal and Carrasco, and John Armstrong, the live-in friend of Sturm's sister, who agreed Margaret was sober at 11:00 p.m. Pandina stated the deceased would have necessarily consumed at least 14 bottles of wine or beer or a mixture of the two in the hours just prior to 5:45 a.m. Drinking one wine cooler, purchased by Sturm at Fina One Stop about 11:00 p.m., would not be enough to bring her blood alcohol content to 0.27 (Pandina referred to 0.27 as her blood alcohol content). He stated further that on the basis of the Villareal and Carrasco affidavits, the alcohol Sturm continued to consume after 5:00 a.m. would have contributed to her blood alcohol content.[3]

Mary Sturm stated by deposition that Margaret introduced her to de la Cruz around November, 1991. She knew that Margaret talked with him often and confided in him. She knew they talked thirty to forty-five minutes at a time. Margaret would either buy beer or de la Cruz would give it to her, and she would drink some and put some in the car. "He would give her beer." She said she knew of five times between November, 1991, and March of 1992 when she did not pay for the beer she got from de la Cruz. "He would go and get them out of the cooler and give them to her." When de la Cruz and Margaret were talking, he would go and get one beer and she would drink it, then another, and she would drink it, and then another, and she would drink it. Asked if she consumed the alcohol on the premises, the sister stated that she did. Sometimes Margaret got the beer from the cooler herself. When she was given the beer, she consumed it on the premises. Usually only the three of them would be present. This was usually around midnight. One time Ismael Rodriguez was there and purchased a 15–pack of beer, giving it to her sister, who then drank it "outside." She was asked: "You never saw Mr. Cruz or any Neal employee ever sell or give beer to your sister when she was obviously intoxicated, did you?" She recalled an occasion when Margaret got a 15–pack of beer, and she was intoxicated. She knew Margaret was intoxicated because "we had just left the bar and I know she was intoxicated." Also it was Margaret who went into the store and gave de la Cruz the money for the 15–pack.

On that occasion the sisters had called ahead, and de la Cruz told them, "Okay, I'll sell you the beer. Just come up here and get it." When Margaret went inside the store and walked to the cooler to get the beer, "she wasn't walking straight ... Anyone in their right mind could have known that she was drunk." Asked if she had discussed with de la Cruz why he was supposedly giving beer to her sister and allowing her to consume it on the premises, she answered she had. De la Cruz replied, "[I]t wasn't going to hurt her, one wasn't going to hurt her."

Mary also remembered two times when Margaret told her she went to Fina One Stop about 12:00 or 12:30 and stayed until 4:00, 5:00 or 6:00 in the morning drinking the entire time, becoming intoxicated. She went

---

**3.** Not any of the objections directed to the affidavits, depositions, or other evidence of the plaintiffs/non-movants were ruled upon by the trial court.

to talk to de la Cruz and was drinking there, coming home intoxicated when Mary was getting up. Mary stated that Margaret told her she went to Fina One Stop when de la Cruz was there because he was her only friend who worked there.

Asked if her sister was at Fina One Stop drinking on the premises or in her car after midnight, Mary stated she did that "quite often." She said de la Cruz was the sole person on duty, and he never refused Margaret a drink or a beer when she asked for it. And he never required Margaret to pay for the beer or the wine that she took in Mary's presence. They went to Fina One Stop two or three times a week in the months before Margaret was killed. They usually left the store about 1:30 or 2:00 a.m., and sometimes Margaret would drop Mary off and then return by herself to Fina One Stop. Mary acknowledged that Margaret was an alcoholic.

Erma Rodriguez testified by deposition that she was Margaret Sturm's supervisor at Dairy Queen. Sturm drank alcohol every day. She often was "hung over" or sick from drinking. She had a history of drinking and had charges of "DWIs"; in fact, she was on probation for DWI when she first worked at Dairy Queen, where she was employed for about four years before her death. Sturm told Erma Rodriguez about her friendship with de la Cruz, and she knew Sturm went to Fina One Stop frequently to see him. When Erma inquired where Margaret got the money to pay for the alcohol, she told Erma she did not require money to obtain alcohol because it was furnished to her. Erma knew that de la Cruz had introduced Sturm to Ismael Rodriguez, a truck driver who came through Kenedy on hauls. He and Sturm had a romantic relationship, spending at least one night at a Kenedy motel.

"I did not sell, serve, give or provide Sturm with any alcoholic beverages on March 16, 1992," states de la Cruz in his affidavit. Thus, the defense is that Neal is not vicariously liable because the employee did not provide any intoxicants on that particular date to Sturm. De la Cruz did not swear that he did not provide alcoholic beverages to Sturm on other occasions.

As a general rule, negligence and causation may be established by circumstantial as well as direct evidence. *Cross v. City of Dallas,* 581 S.W.2d 514, 515 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.). A fact is established by circumstantial evidence when it is fairly and reasonably inferred from the evidence presented. *Id.; see H.E. Butt Grocery Co. v. Pena,* 592 S.W.2d 956, 959 (Tex.Civ.App.—Austin 1980, no writ).

When a particular status or condition, such as a course of conduct or a personal relationship, has once been established, it is presumed to continue until the contrary is shown. *See Holmes v. Tibbs,* 542 S.W.2d 487, 488 (Tex.Civ.App.—Corpus Christi 1976, no writ). Tex.R.Civ.Evid. 406 provides, in relevant part, that evidence of the habit of a person, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person on a particular occasion was in conformity with the habit. *See Strickland v. Coleman,* 824 S.W.2d 188, 192 (Tex.App.— Houston [1st Dist.] 1991, no writ.)

Thus, in the present case, a fact issue is raised by the circumstantial evidence, since it is fairly and reasonably inferred from the evidence presented. There is summary judgment evidence of ongoing transactions between Margaret Sturm, a known alcoholic, and de la Cruz, the night manager of the Fina One Stop, the only source of alcoholic beverages after hours in that area. There is evidence that he provided the person, who was either on her way to obvious intoxication or who was already obviously intoxicated, with alcoholic beverages several times a week during a several months' period until her death. These transactions, which are similar occurrences over an extended period of time, are relevant to prove that the conduct of de la Cruz on the occasion in question, the early morning hours of May 16, 1992, was *in conformity with his habit of* providing Sturm with alcoholic beverages. The facts raised by appellants show a course of dealing between de la Cruz and Sturm, which is probative of, and goes to, the fact question of causation.

The defensive matter in issue, as asserted by the movant, is whether or not

Neal provided alcoholic beverages to an already intoxicated Margaret Sturm. Evidence of the similar occurrences on many other occasions would be admissible if it tends to illuminate the particular occurrence in question and show the relationship of these parties. Further, the similar occurrences would be admissible to explain de la Cruz's conduct on those other occasions when Margaret Sturm obtained alcoholic beverages from him after regular sales hours. The same or similar conditions (providing alcoholic beverages to an obviously intoxicated person on previous occasions) may show a course of dealing and tend to prove a fact issue.

In deciding whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movants must be taken as true. Every reasonable inference must be indulged in favor of the non-movants and any doubts resolved in their favor. We hold there exists a disputed fact issue. Neal has failed to negate the essential element of the plaintiffs' case. The evidence will not support a summary judgment for Neal based on its second defense, that it did not provide alcoholic beverages to an obviously intoxicated person. The points of error regarding the defense are sustained.

The judgment is reversed and the cause remanded for trial.