**John L. PARKER, Appellant,**

v.

**20801, INC., Appellee.**

**No. 14-05-00250-CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 11, 2006.

Rehearing Overruled May 25, 2006.

Philip F. Klosowsky, Sugar Land, Barney L. McCoy, Houston, for appellant.

David P. Andis, Spring, Frank D. Lanter, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices YATES and ANDERSON.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant John L. Parker appeals after the trial court granted summary judgment in favor of appellee 20801, Inc. ("20801").[1] In two points of error, appellant contends that the trial court's grant of summary judgment was improper because (1) Section 2.03 of the Texas Alcoholic Beverage Code does not preempt the common law causes of action asserted by appellant; and (2) appellee failed to establish the safe harbor affirmative defense contained in Section 106.14(a)(3) of the Texas Alcoholic Beverage Code. We affirm in part and reverse and remand in part.

### Background

On November 19, 1999, appellant John L. Parker attended the grand opening of Slick Willie's Family Pool Hall, where he consumed alcoholic beverages throughout the evening. According to appellant, the bartender told him to "drink up" and the manager and employees gave him a number of drinks. During the evening, appellant encountered Anthony Griffin, the son of appellant's ex-girlfriend. Appellant and Griffin eventually became intoxicated and began to argue inside the pool hall. As a result, manager Craig Watson told appellant to leave and escorted him to the door. Watson went back inside the pool hall when he saw appellant walking toward a car.

A few minutes later, Griffin, his mother, and his girlfriend followed appellant outside. Watson observed appellant and Griffin conversing in an apparently civil manner. Before long, however, the previous argument recommenced. Griffin suddenly punched appellant, causing him to fall and strike his head on the pavement. The fall fractured appellant's skull and caused permanent brain damage.

Appellant sued 20801 under the Dram Shop Act.[2] See TEX. ALCO. BEV.CODE ANN. §§ 2.01, 2.03 (Vernon 2005); § 2.02 (Vernon Supp.2005); Smith v. Sewell, 858 S.W.2d 350, 359 n. 1 (Tex.1993) (Chapter 2 of the Texas Alcoholic Beverage Code is commonly known as the "Dram Shop Act"). Appellant alleged that 20801, its agents, servants, and employees were negligent in that "they provided, supplied, sponsored, encouraged, served and/or sold intoxicating alcoholic beverages and liquor to [appellant] and Griffin when they knew or should have known that they had become obviously intoxicated to such a de-

1. While in his brief appellant refers to appellee as "20801, Inc. d/b/a Slick Willie's Family Pool Hall," the original petition, subsequent pleadings, and order granting summary judgment all refer to appellee only as "20801, Inc." Accordingly, we will do the same.

2. Appellant also named Slick Willie's Family Pool Hall, Inc. as a defendant, and the trial judge granted summary judgment for both 20801 and Slick Willie's Family Pool Hall, Inc. On appeal, appellant contests only the grant of summary judgment in favor of 20801; therefore, we need not discuss any of appellant's claims against Slick Willie's Family Pool Hall, Inc.

It is also relevant to note that after being sued by appellant, 20801 and Slick Willie's Family Pool Hall, Inc. named Griffin and his mother as third-party defendants, alleging that they contributed to appellant's injuries by delaying appellant's receipt of medical treatment. Griffin was also tried criminally for assaulting appellant. The record on appeal contains excerpts of testimony from Griffin's criminal trial, as well as excerpts from appellant's deposition in the underlying civil case.

gree as to present a clear danger to themselves and others, and such intoxication was a proximate cause of the damages suffered by [appellant]."

Appellant also pled a cause of action based on premises liability, alleging that the breach of 20801's duty to exercise reasonable care to protect him from Griffin's intentional and criminal conduct was the proximate cause of his injuries. Appellant alleged four specific ways in which 20801 and its agents, servants, and employees were negligent: (1) in telling appellant to leave the pool hall without regard for his safety in the parking lot; (2) in failing to demand that Griffin leave the premises before appellant was injured; (3) in failing to timely notify the police; and (4) in failing to warn appellant that Griffin was following him outside.

In its motion for summary judgment, 20801 argued that Section 2.03 of the Code preempts appellant's common law causes of action. Additionally, 20801 argued that it had complied with the safe harbor defense in Section 106.14 of the Code, which immunizes a commercial provider of alcoholic beverages from liability for its employees' provision of alcohol to an intoxicated customer if: (1) the employer requires employees to attend a commission-approved seller training program; (2) the employee has actually attended such a training program; and (3) the employer has not directly or indirectly encouraged the employee to violate such law. *See* TEX. ALCO. BEV.CODE ANN. § 106.14(a)(1)-(a)(3) (Vernon 2005).

The trial court granted 20801's motion for summary judgment on February 1, 2005 without specifying the grounds therefore. On appeal, appellant specifically contends that (1) his premises liability claim is not preempted and (2) 20801 failed to establish that it did not directly or indirectly encourage its employees to violate the law.

## Standard of Review

In a traditional motion for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). In reviewing a grant of summary judgment, we take as true all evidence favorable to the nonmovant and make all reasonable inferences in the nonmovant's favor. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex.1985). A defendant, as movant, is entitled to summary judgment if it (1) disproves at least one element of the plaintiff's theory of recovery; or (2) pleads and conclusively establishes each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *Am. Tobacco Co., v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). An element is conclusively proved if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply Inc.*, 644 S.W.2d 443, 446 (Tex.1982).

The nonmovant does not have a burden to respond to a traditional motion for summary judgment unless a movant establishes its right to judgment as a matter of law. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989). If the movant has met its burden, it is incumbent upon the nonmovant to respond to the movant's evidence and to present contrary evidence sufficient to create a fact issue, or else risk an adverse ruling. *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 907 (Tex.1982). When, as here, a trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm summary judgment if any of the summary judgment grounds are meri-

torious. *Oliphint v. Richards,* 167 S.W.3d 513, 515–16 (Tex.App.-Houston [14th Dist.] 2005, pet. denied).

### Preemption of Premises Liability Claim

■ In his first point of error, appellant contends that because he can simultaneously pursue both dram shop and premises liability causes of action, the trial court's grant of summary judgment in favor of 20801 was erroneous. We disagree.

■ Before the enactment of the Dram Shop Act in 1987, no cause of action existed against a provider of alcoholic beverages for injuries resulting from a patron's intoxication. *Smith,* 858 S.W.2d at 352; *Steak & Ale of Tex., Inc., v. Borneman,* 62 S.W.3d 898, 906 (Tex.App.-Dallas 2001, no pet.); *Holguin v. Ysleta Del Sur Pueblo,* 954 S.W.2d 843, 852 (Tex.App.-El Paso 1997, pet. denied). The Dram Shop Act provides that commercial providers of alcohol may be liable for the actions of their intoxicated customers if (1) it was apparent to the provider that the individual being sold, served, or provided with alcohol was obviously intoxicated to the extent that he presented a clear danger to himself and others and (2) the patron's intoxication was the proximate cause of the damages suffered. TEX. ALCO. BEV.CODE ANN. §§ 2.01(1), 2.02(b) (Vernon 2005); *Smith,* 858 S.W.2d at 352.[3]

The Dram Shop Act "provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older."[4] TEX. ALCO. BEV.CODE ANN. § 2.03(c) (Vernon 2005). The Act also states that "[the] liability of providers under this chapter for the actions of their employees, customers, members, or guests who are or become intoxicated is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages." TEX. ALCO. BEV.CODE ANN. § 2.03(a) (Vernon 2005).

■ While no court has addressed preemption in the specific context of premises liability, courts clearly have held that the Act's exclusive remedy provision bars other common law actions against a statutorily liable provider. For example, in *Southland Corp. v. Lewis,* 940 S.W.2d 83, 84 (Tex.1997), plaintiff Dori Sue Lewis was injured in an automobile collision with a truck driven by Reed Bulaich. Bulaich, twenty-one, had been drinking at a party and then at a bar. *Id.* He then drove several friends to a 7–Eleven convenience store, where passenger Chris Ernemann

---

**3.** Under the Act, a provider is "a person who sells or serves an alcoholic beverage under authority of a license or permit issued under the terms of this code or who otherwise sells an alcoholic beverage to an individual." TEX. ALCO. BEV.CODE ANN. § 2.01(1) (Vernon 2005).

**4.** The legislature enacted the Dram Shop Act on June 1, 1987. Act of June 1, 1987, 70th Leg., ch. 303, § 3, 1987 Tex. Gen. Laws 1674, *amended by* Act of June 20, 2003, 78th Leg., ch. 456, § 1, 2003 Tex. Gen. Laws 1698, 1698, *amended by* Act of June 17, 2005, 79th Leg., ch. 643, § 1, 2005 Tex. Gen. Laws 1617, 1617. Two days later, the Texas Supreme Court decided *El Chico v. Poole,* 732 S.W.2d 306, 314 (Tex.1987), in which it stated that providers have a duty under both common law negligence principles and the newly enacted Dram Shop Act not to serve alcoholic beverages to a patron when the provider knows or should know that the patron is intoxicated. However, because the Dram Shop Act did not go into effect until June 11, 1987, seven days after the *El Chico* decision, Texas courts have recognized that the legislature created a much more limited statutory cause of action against commercial providers of alcoholic beverages than *El Chico* suggests. *Smith,* 858 S.W.2d at 353; *Borneman,* 62 S.W.3d at 906; *Fuller v. Maxus Energy Corp.,* 841 S.W.2d 881, 884 (Tex.App.-Waco 1992, no writ.); *Boyd v. Fuel Distrib., Inc.* 795 S.W.2d 266, 273 (Tex.App.-Austin 1990, writ denied).

bought more beer. *Id.* Bulaich did not enter the convenience store or consume any of the beer. *Id.* The accident occurred shortly after Bulaich and his friends left the convenience store. *Id.*

Lewis sued 7–Eleven and the bar under the Dram Shop Act. She also alleged that the defendants were negligent and negligent per se in providing alcohol to both Bulaich and Ernemann. *Id.* 7–Eleven moved for summary judgment on grounds that it had not proximately caused Lewis's damages and that the Act's exclusive remedy provision precluded Lewis's negligence and negligence per se claims. *Id.* The trial court granted summary judgment in favor of 7–Eleven on all claims without stating grounds therefore. *Id.* The court of appeals reversed and remanded, but the supreme court reversed and rendered judgment in favor of 7–Eleven. *Id.*

On the preemption issue, the supreme court held that "Lewis's negligence and negligence per se claims [were] clearly barred by the exclusive remedy provision of chapter 2 of the Texas Alcoholic Beverage Code." Quoting the statutory language, the court stated that "section 2.03 expressly precludes a negligence or negligence per se cause of action against a provider of alcohol when the purchaser is at least eighteen years of age." The court reasoned that summary judgment in favor of 7–Eleven was proper because both Ernemann and Bulaich were over eighteen years of age. *Id.*[5]

Similarly, in *Boyd v. Fuel Distrib. Inc.*, 795 S.W.2d 266, 268 (Tex.App.-Austin 1990, writ denied), eighteen-year-olds Neal Boyd and Robert Kruse were involved in a car accident after Kruse had bought beer from a convenience store operated by the defen-

dant. Boyd, the driver, was killed, and Kruse, the passenger, was seriously injured. *Id.* Boyd and Kruse had been drinking before stopping at the convenience store, and they were both intoxicated at the time of the accident. *Id.* The plaintiffs brought a cause of action under the Dram Shop Act; they also alleged a violation of Section 106.03(a) of the Code, which makes it an offense to sell an alcoholic beverage to a minor if the sale is committed with criminal negligence. TEX. ALCO. BEV.CODE ANN. § 106.03(a) (Vernon 2005); *Boyd*, 795 S.W.2d at 268. The plaintiffs argued that they were entitled to recover on their claim under Section 106.03 because that section overlaps with the Dram Shop Act. *Boyd*, 795 S.W.2d at 273. The Third Court of Appeals rejected both that argument and the notion that the legislature did not intend to eliminate common law causes of action by enacting the Dram Shop Act. *Id.* In doing so, the court stated:

> We may not ignore the Legislature's express statement that chapter 2 is the exclusive cause of action for providing alcoholic beverages to a person eighteen years of age or older *and that it is in lieu of any other statutory or common law duty of providers.* Thus, we hold that chapter 2 means what it says and that it *sets forth the exclusive cause of action for providing alcohol to a person eighteen years of age and older.*

*Id.* (emphasis added).

Two years later, the Tenth Court of Appeals applied the holding and rationale of *Boyd* to a similar case. *See Fuller v. Maxus Energy Corp.*, 841 S.W.2d 881, 884 (Tex.App.-Waco 1992, no writ.). In *Fuller*, eighteen-year-old Terry Nishimuta, a soldier at Fort Hood, purchased beer at a gas

---

**5.** The supreme court also noted that the evidence established that 7–Eleven did not provide alcohol to an obviously intoxicated Bulaich, since Bulaich had remained in the car.

and did not consume any of the alcohol purchased from 7–Eleven. *Southland Corp.*, 940 S.W.2d at 85.

station without being required to show his identification to the clerk. *Id.* at 883. Several hours later, Nishimuta was involved in a car accident that killed two other soldiers. *Id.* The deceased soldiers' parents brought wrongful death suits against the store manager and several corporate entities, alleging causes of action for common law negligence and negligence per se under Section 106.03(a) of the Code. *Id.* The trial court granted the defendants' motion for summary judgment based on the exclusive remedy provision of the Dram Shop Act. *Id.* On appeal, the soldiers' parents argued that the trial court's interpretation of the exclusive remedy provision improperly denied them their common law cause of action. *Id.* The court of appeals disagreed, reiterating that "section 2.03 sets out the legislature's clear intent that the dram shop act be the exclusive remedy for the sale of alcohol to persons eighteen years or older, in lieu of any other statutory or common law duty" and asserting that "Chapter 2 of the Code is

the exclusive remedy for damages for providing alcohol to a person eighteen years of age or older." *Id.* at 883–84.

Appellant contends that this line of case law is not controlling because appellant's premises liability claim is not based on over-service of alcohol. Specifically, appellant asserts that "[t]he nexis [sic] of a dram shop act case is over service by the alcohol provider which results in injury to either the customer or to an innocent party," whereas "the nexis [sic] of a premises liability case is the negligent failure to protect a customer from the intentional and criminal conduct of a third party." Thus, appellant concludes, a claim under the Dram Shop Act and a premises liability claim are not mutually exclusive.[6]

■ We recognize that a defendant has a general common law duty to prevent the criminal acts of a third party when the criminal conduct is foreseeable as a result of the defendant's negligence. *Nixon,* 690 S.W.2d at 550. However, the plain lan-

---

**6.** In support of his premises liability claim, appellant primarily relies on *Gonzalez v. South Dallas Club,* 951 S.W.2d 72 (Tex.App.-Corpus Christi 1997, no writ). In *Gonzalez,* appellant Laurie Ann Gonzalez and her friends were involved in an altercation with another group of people at the defendant night club. *Id.* at 73. Because the members of the other group threatened to harm Gonzalez even after the fight was over, the club's employees allowed her to leave through the back door in hopes of avoiding another encounter. *Id.* at 74. However, members of the other group followed Gonzalez and a second dispute erupted about a mile away from the night club's premises. During this second altercation, Gonzalez was struck and seriously injured by a pick-up truck. *Id.*

Gonzalez sued the night club, alleging dram shop liability for selling alcoholic beverages to the driver of the truck as well as negligence for failing to provide adequate security and to summon the police. *Id.* The club moved for summary judgment on grounds that it had established the safe harbor affirmative defense under the Code. *See* Tex. Alco. Bev.Code

Ann. § 106.14. Later, the club also moved for summary judgment on Gonzalez's negligence and premises liability claims because the altercation had not occurred on the club's premises. *Id.* The trial court granted the club's motion. *Id.*

The Thirteenth Court of Appeals affirmed, reasoning that the club could not have foreseen the need to protect Gonzalez against the criminal conduct of a third party that did not occur on the club's premises. *Id.* at 76. As appellant correctly notes, the court of appeals remarked that "the duty to provide protection arises from [defendants'] power of control or expulsion that their occupation of the premises gives them over the conduct of a third person who might be present." *Id.* However, because of its holding on the premises liability issue—that the night club owed no duty to Gonzalez—the court of appeals did not address whether the Dram Shop Act preempted the premises liability and negligence claims. Accordingly, we do not find *Gonzalez* to be as instructive as the above-mentioned cases, which support preemption.

guage of Section 2.03 clearly states that providers' liability under the Dram Shop Act "for the actions of their employees, customers, members, or guests who are or become intoxicated *is in lieu of common law or other statutory law warranties and duties.*" Tex. Alco. Bev.Code Ann. § 2.03(a) (Vernon 2005) (emphasis added). A plain reading of this section obtains only one meaning: 20801's common law duty as a premises owner is preempted by the Code. *Borneman,* 62 S.W.3d at 908 (the legislature "expressly pronounced the Dram Shop Act to be the exclusive remedy against providers of alcoholic beverages to individuals age eighteen or older"; language that action under the Act *is in lieu of common law* or other statutory law warranties and duties "clearly expresses legislative intent to exclude all common-law rights and bar all claims except those specifically authorized by statute"); *Holguin,* 954 S.W.2d at 853 (because the Act was created by statute in derogation of common law principles to regulate commercial providers of alcohol, "courts should defer to the plain meaning of the text of the law rather than using the dram shop law to fashion judicially created remedies"); *Gonzalez,* 951 S.W.2d at 76 ("[Dram Shop Act] provides the exclusive basis for the civil liability of commercial providers of alcohol who provide, sell, or serve an alcoholic beverage to an adult who is obviously intoxicated."). We hold that because appellant's premises liability claim is preempted by the Code, the trial court did not err to the extent that it granted summary judgment against appellant's premises liability claim. We overrule appellant's first point of error.

### Safe Harbor Affirmative Defense

■ In his second point of error, appellant contends that 20801 did not establish the third element of its affirmative defense

to appellant's dram shop cause of action. We agree.

Section 106.14 of the Code, otherwise known as the safe harbor defense, provides that the actions of an employee regarding the sale, service, dispensing, or delivery of alcohol shall not be attributable to the employer if: (1) the employer requires its employees to attend a commission-approved seller training program; (2) the employee has actually attended such a training program; and (3) the employer has not directly or indirectly encouraged the employee to violate such law. Tex. Alco. Bev.Code Ann. § 106.14(a)-(c) (Vernon 2005); *Perseus, Inc. v. Canody,* 995 S.W.2d 202, 207 (Tex.App.-San Antonio 1999, no pet.).

Cases interpreting direct or indirect encouragement of Code violations are highly fact-intensive, and summary judgment evidence must clearly and specifically deny direct or indirect encouragement as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Pena v. Neal, Inc.,* 901 S.W.2d 663, 667 (Tex.App.-San Antonio 1995, writ denied). In *Pena,* for example, the Fourth Court of Appeals held that the defendant company had not established the third element of the safe harbor defense when the only summary judgment evidence it submitted was conclusory affidavits. 901 S.W.2d at 667–68. In that case, defendant Neal, Inc., ("Neal") operated an all-night convenience store where customers could buy alcoholic beverages after regular business hours. *Id.* at 666. One night, Margaret Sturm visited the store and drove away intoxicated. *Id.* Ten minutes later, Sturm's car crossed the center lane and crashed head-on into a car driven by Gloria Arriola. *Id.* Sturm, Arriola, and Arriola's passenger were killed. *Id.* Arriola's relatives sued Neal under the Dram Shop Act. *Id.* at 665. Neal contended, *inter alia,* that the Code's safe harbor provision

shielded it from liability. *Id.* at 666. The trial court granted summary judgment in favor of Neal without stating its grounds. *Id.* The Fourth Court of Appeals reversed, holding that summary judgment based on the safe harbor provision was improper because the evidence offered by Neal failed to conclusively establish the third element of the defense. *Id.* at 668–69. Neal's summary judgment evidence consisted of the affidavit of its president, who stated: "Neither I nor anyone else at Neal, Inc., has directly or indirectly encouraged [employee] Margarito de la Cruz to violate the Texas Alcoholic Beverage Code or to sell alcoholic beverages to an intoxicated person." *Id.* at 667. The court of appeals reasoned that the affidavit was conclusory and therefore was incompetent as summary judgment evidence because its language "merely repeated the allegations in the motion and the words of the statute." *Id.* at 668.[7]

Similarly, in *Gonzalez*, the only summary judgment evidence that the defendant night club did not directly or indirectly encourage an employee to violate the law was an employee's statement in an affidavit that the management "held weekly staff meetings in which conformance with [Code] regulations regarding serving alcoholic beverages was discussed." 951 S.W.2d at 77. In reversing summary judgment in favor of the club, the Thirteenth Court of Appeals reasoned that although the employee's affidavit did not simply track the statutory language, it provided the court "with no more information than would such a conclusory statement" and gave no insight into "appellee's policy regarding compliance with the code." *Id.*

In the instant case, Watson's affidavit is the only summary judgment evidence offered by 20801 *regarding enforce-ment* of its alcohol policies. Watson states in his affidavit that "each month [the management] meet[s] with all the employees and discuss[es] safety issues ... and emphasize[s] strict compliance with Slick Willie's Responsible Alcohol Service policy and [the management's] strict policy of disciplining employees who violate this policy." More specifically, Watson asserts that only bartenders are allowed to fill drink orders, and that both the server and the bartender mark the tab. Watson also states that the manager reviews the number of customers on each ticket and the amount of alcohol being served to individual customers and also talks to customers to assess their levels of intoxication. According to Watson, if a customer appears intoxicated, he or she must not be served any more alcohol; instead, servers should offer the customer free food and non-alcoholic beverages. Watson also avers that all employees are encouraged to report suspected over-service of alcohol.

We agree with 20801 that Watson's affidavit is specific in establishing that it had a policy prohibiting the employer's encouragement of direct or indirect violations of the Code. Nevertheless, we believe that a fact issue exists whether 20801 was actually enforcing its policies on the night in question. 20801 argues that the appropriate focus under the safe harbor provision is whether a provider has established the existence of policies and procedures to ensure compliance with the Code. We disagree that establishment of compliance procedures alone suffices to trigger the protection of the safe harbor provision. We agree with Parker that a provider also

---

**7.** Neal also offered an affidavit of de la Cruz, which, according to the court of appeals, "allege[d] the same conclusions in the words of the statute and also fail[ed] to establish facts." *Id.*

must prove enforcement of its alcohol policies on a particular occasion to satisfy the third element of the safe harbor defense.

As mentioned above, the *Gonzalez* court held that summary judgment based on the safe harbor defense was improper because a conclusory affidavit did not provide sufficient evidence of the defendant's *"policy regarding compliance with the code."* 951 S.W.2d at 77 (emphasis added). 20801 cites the court's use of the word "policy" to support its contention that the existence and nature of a provider's alcohol policy is the sole relevant inquiry under Section 106.14. We disagree with this interpretation in light of other language in *Gonzalez* recognizing that enforcement of a provider's policy is a coequally relevant concern. Remarking that "encouragement to violate the liquor laws in question, i.e., to serve alcohol to an obviously intoxicated patron, may take many subtle forms," the court of appeals stated that "negation of any direct or indirect encouragement would require *a more detailed factual analysis of the circumstances under which alcoholic beverages were being sold and served." Id.* (emphasis added). This language suggests that in addition to proving the existence of an alcohol policy and procedures for its enforcement, a provider must present specific facts demonstrating its compliance with that policy.

Similarly, when discussing the requirements of affidavits offered as summary judgment proof under the safe harbor provision, the *Pena* court stated that "the facts of each case involving employees who are providers of alcoholic beverages will differ *regarding the affirmative actions taken by an employer* to avoid either directly or indirectly encouraging the employee to violate the alcoholic beverage code." 901 S.W.2d at 667 (emphasis added). Despite 20801's insistence that this language refers to the existence of a pro-

vider's policies and procedures, we believe that a more reasonable interpretation of "affirmative actions" encompasses specific instances of the policies' enforcement, especially in light of the following language:

> While we agree with [defendant's] argument that the legislature has provided a safe harbor for the employer who requires his employees to attend the commission-approved seller training programs, the statute's words plainly demonstrate the employer must do more than simply require attendance at the training programs. *It cannot then turn its back on all actions of the "trained" seller-employees, safe in the assumption that even if employee violations of the alcoholic beverage code do occur, recovery against the employer will be barred and the employer cannot be held liable. This cannot be the intention of the legislature.*

*Id.* (emphasis added).

Furthermore, the *Pena* court noted that even had the proffered affidavit established the safe harbor defense, summary judgment would have been improper because the plaintiff's evidence regarding compliance was sufficient to raise a fact issue. *Id.* at 668. An expert witness reviewed Neal's loss control manual, employee handbook and policy manual, and several depositions and affidavits. *Id.* In his own affidavit, the expert witness emphasized Neal's failure to install cameras, its failure to require employees to report repeated instances of customer intoxication and loitering, and its disregard for employees' failure to follow policy rules, including the rule that "any employee permitting consumption of alcohol will be immediately terminated." *Id.* The expert witness ultimately opined that Neal had both directly and indirectly encouraged de la Cruz to provide alcoholic beverages to an obviously

intoxicated person.[8] *Id.* This emphasis on noncompliance with the provider's policies suggests that enforcement is a more pressing concern under Section 106.14 than 20801 acknowledges on appeal.

Similarly, in *Perseus, Inc.*, the Fourth Court of Appeals held that a jury could have found that the Hippodrome, a night club owned by defendant Perseus, Inc. ("Perseus"), indirectly encouraged its employees to serve alcohol to intoxicated patrons. 995 S.W.2d at 209. An expert witness testified that the Hippodrome failed to enforce its written policies when it allowed patron Sam Selman to enter the club in an intoxicated condition, failed to monitor Selman's behavior, continued to serve him alcohol, and allowed him to leave the club in an intoxicated state.[9] *Id.* The expert witness believed that the Hippodrome's failure to enforce its policies "evidenced an indirect encouragement to violate the law." *Id.* A company shareholder also testified that the Hippodrome's employees should have followed the policies and admitted that "policies [are] irrelevant in the absence of enforcement." *Id.*

Language in *I–Gotcha, Inc. v. McInnis*, 903 S.W.2d 829 (Tex.App.-Fort Worth 1995, writ denied), also supports our interpretation of the safe harbor provision. In *I–Gotcha, Inc.*, teenagers John and Jeff McInnis and their friend Chad Arnett went to Wranglers, a topless bar owned by the defendant. *Id.* at 832. After becoming intoxicated at the bar, John and Jeff were involved in a car accident that killed John and left Jeff seriously injured.[10] *Id.* at 834. Trial testimony revealed that the teens were not required to show valid identification to enter the club or to order alcoholic beverages. *Id.* at 833. Apparently, Wranglers had a reputation for not checking I.D.s, and the boys saw several other underage acquaintances drinking there. *Id.* There was also evidence that Wranglers knew about the underage drinking problem because a former waitress had been arrested for serving alcohol to a minor there. *Id.* at 836. Furthermore, although John became noticeably intoxicated, no Wranglers employees attempted to call the boys a cab, inquired if they had a designated driver, or offered them non-alcoholic beverages or time to sober up. *Id.* at 834–35.

The Second Court of Appeals held that there was sufficient evidence to support the jury's finding that Wranglers directly encouraged its employees to violate the law. *Id.* at 838. Although the bar's owner testified that he believed employees should be told to check I.D.s and to stop serving intoxicated patrons, he did not include these standards in the "waitresses' duties" section of the employee rule book. *Id.* Notably, however, he did see fit to include a rule ensuring that waitresses checked I.D.s before accepting credit card payments. *Id.* Furthermore, the owner did

---

8. The court of appeals also held that summary judgment was improper based on Neal's defense that it did not provide alcohol to an obviously intoxicated person. *Id.* at 672. Evidence showed that Sturm, who was an alcoholic, frequently visited the convenience store, that de la Cruz routinely gave Sturm free alcoholic beverages, and that Sturm often became intoxicated in de la Cruz's presence. The court held, therefore, that a fact issue existed as to whether de la Cruz served alcohol to Sturm on the night of her death. *Id.*

9. Selman drove his car while intoxicated and hit and killed two pedestrians. The pedestrians' parents brought a wrongful death action against Selman and Perseus. *Id.* at 203.

10. Although he was intoxicated, John drove to Chad's house. *Id.* The trio talked for a few minutes, then John sped away with Jeff in the passenger seat. *Id.* The accident occurred when John lost control of the car, which flipped off the side of a bridge. *Id.* When the accident occurred, John's blood alcohol level was nearly four times the legal limit. *Id.*

not provide written guidelines to ensure alternate transportation for intoxicated patrons or time for them to sober up. *Id.* Finally, despite the owner's knowledge that his establishment had a problem with underage drinking, he did not increase security or stress to his employees the importance of following the law, even though he knew the entertainment at the club would likely attract underage drinkers. *Id.*

Significantly, the court of appeals asserted that despite the lack of case law or legislative history regarding what evidence the legislature intended to be used to show encouragement of employees to violate the law, courts should "presume that a just and reasonable result is intended and that the public interest is to be favored over private interest." *Id.* (citing TEX. GOV'T CODE ANN. § 311.021(3), (5) (Vernon 2005)). When construing a statute, it is necessary to "consider the object the legislature was attempting to attain." *I–Gotcha, Inc.,* 903 S.W.2d at 838 (citing TEX. GOV'T CODE ANN. § 311.023(1) (Vernon 2005)). Finally, the court stated:

It is in the public interest to discourage bar owners from profiting through breaking the law by serving alcohol to minors and obviously intoxicated minors. Further, in passing the Dram Shop Act, the Texas legislature intended to provide a statutory remedy where the negligence of a bar was found to be the proximate cause of an individual's injuries (citation omitted).

*I–Gotcha, Inc.,* 903 S.W.2d at 838.[11]

■ Appellee insists that this court should focus on the existence of its alcohol policies and enforcement procedures rather than the specific acts of its employees.[12] Specifically, appellee argues that it met its burden because it produced evidence that it has an alcohol policy. Then, according to appellee, the burden shifted to appellant to show that appellee has a policy that encourages its employees to break the law. Appellee asserts that appellant has submitted no evidence regarding appellee's alcohol policies and therefore did not raise a fact issue. However, there is no direct authority to support appellee's argument of burden-shifting on its affirmative defense.[13] Meanwhile, language in the

11. *Perseus, Inc.* and *I–Gotcha, Inc.* differ from the instant case and the other two safe harbor cases cited herein in that they are appeals from jury trials, not summary judgments. *See Perseus, Inc.,* 995 S.W.2d at 204; *I–Gotcha, Inc.,* 903 S.W.2d at 832. While we recognize this procedural distinction, we cite these cases for their discussion of the importance of the enforcement of employers' alcohol policies.

12. Appellee additionally argues that summary judgment was proper because appellant failed to produce any evidence of probable cause and other elements of his cause of action. However, appellee did not move for 166a(c) summary judgment on these grounds and therefore cannot use these arguments to support the summary judgment. TEX.R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 340–41 (Tex.1993).

13. Appellee cites *Cianci v. M. Till, Inc.,* 34 S.W.3d 327 (Tex.App.-Eastland 2000, no pet.), in support of its burden-shifting argument. In *Cianci,* the plaintiff was injured in an accident with a drunk driver and sued the bar where the driver had been drinking. *Id.* at 328. The Eleventh Court of Appeals held that the bar had not established the safe harbor defense in its 166a(c) motion for summary judgment because a fact issue existed whether the bar directly or indirectly encouraged employees to break the law. *Id.* at 330. The issue arose when the plaintiff presented testimony from an employee stating that the bar's manager told her to keep serving alcohol to obviously intoxicated people until he made a decision to cut them off. *Id.* 20801 cites *Cianci* for the proposition that it met its burden by producing evidence of its alcohol policies in the form of Watson's affidavit. Unlike *Perseus, Inc.* and *Pena,* which discuss the defendant's summary judgment evidence as well

above-mentioned cases indicates that enforcement is also a relevant consideration and that failure to enforce alcohol policies can constitute indirect encouragement to break the law.

We recognize that these opinions focused in large part on employers' written alcohol policies. We believe, however, that they forcefully support our conclusion that conclusive evidence of enforcement is of coequal importance in invoking the protection of the safe harbor defense. Similarly, we believe that requiring proof of enforcement of alcohol policies is in the public interest. Clearly, such interpretation satisfies the purpose of the Code, which is an "exercise of the police power of the state for the protection of the welfare, health, peace, temperance, and safety of the state" and "shall be liberally construed to accomplish this purpose." TEX. ALCO. BEV.CODE ANN. § 1.03 (Vernon 2005). *See also Holguin,* 954 S.W.2d at 851 (commenting that case law construing the Dram Shop Act demonstrates that the law exists to further the policy interest in Section 1.03 of the Code). Despite its specific testimony regarding its policies about service to intoxicated patrons, 20801 did not conclusively prove that it did not directly or indirectly encourage its employees to serve alcohol to an intoxicated customer. Accordingly, because appellee did not establish the third element of its affirmative defense, the trial court improperly granted summary judgment on appellant's statutory cause of action. We sustain appellant's second point of error, reverse the judgment of the trial court to the extent that it is based on that defense, and remand the case to the trial court for further proceedings. We affirm

the judgment of the trial court in all other respects.

---

as the plaintiff's, *Cianci* addresses only the evidence that the plaintiff presented to raise a fact issue and omits reference to the defendant's evidence. *Id.* at 330; *see also Perseus,* *Inc.,* 995 S.W.2d at 208–209; *Pena,* 901 S.W.2d at 667–68. Accordingly, we are unpersuaded that *Cianci* supports 20801's burden-shifting argument.